16b 511
25ap280

## WILSON *vs.* THE GENESEE MUTUAL INSURANCE COMPANY.

Where an insurance is effected upon goods belonging to a copartnership, a transfer of interest in the partnership property, and in the policy of insurance, from one partner to the other, will not prevent a recovery, in case of loss ; notwithstanding a clause in the policy declaring that the interest of the assured therein is not assignable, without the written consent of the insurers.

An assignment from one partner to another is not within the principle on which the prohibition is founded.

Where a policy requires that in case any other insurance shall be made, upon the same property, notice shall be given to the insurers and indorsed upon the policy, a notice given to an *agent* and surveyor of the insurers, regularly appointed, and having authority to receive applications for insurance, is sufficient.

THIS was an action upon a policy of insurance for $2000, issued by the defendants to the firm of A. H. Dixon & Co. of Decatur, Michigan, on the goods and stock in their store at Decatur. The firm was composed of A. H. Dixon and Samuel G. Goss. The policy was issued December 25th, 1849. They dissolved partnership, and Goss sold out to Dixon all his interest in the concern, including the property insured, on the 1st of March, 1850. The store with all its contents was destroyed by fire, June 19th, 1850, and goods and stock, exceeding the amount of insurance, destroyed. A. H. Dixon, surviving partner, on the 15th day of March, 1851, assigned the claim and policy to the plaintiff, who commenced this action. The defendants contended that the assignment by Goss, one of the copartners, to Dixon, of all his interest in the concern, without the consent of the company in writing, rendered the policy void. It was proved that at the time of the dissolution Dixon called upon G. M. L. Park, the agent of the company at Kalamazoo, Michigan, through whom the policy was originally issued, and "obtained through him the consent of the company to the transaction." He mentioned to Park the necessity of having the consent of the company indorsed upon the policy in writing. Park replied that under the circumstances it was not necessary ; that they would not require it, because there was no alienation of property, no third person taken in, and no sale contrary to the stipulations of

the policy. The defendants likewise contended that the policy was avoided by the omission of the assured to give notice, or obtain the consent of the company to an insurance effected with the Columbus Insurance Company of Ohio, for $2000, upon the same property, on the 5th day of April, 1850. It was proved that Dixon gave notice of this insurance to Park, who indorsed an acceptance of the same upon the policy, on the 8th day of April, 1850. The defendants proved that they had issued to Park a certificate of agency, stating that he " had been regularly appointed an agent and surveyor of the company, and is duly authorized to take applications for insurance in the said company."

The cause was tried at the New-York circuit in Sept. 1852, before Justice Roosevelt; when a' verdict was taken for the plaintiff for $2144, subject to the opinion of the court on a case.

*J. Sherwood,* for the plaintiff.

*L. N. Bangs,* for the defendants.

*By the Court,* Roosevelt, J. In the contract of insurance perfect good faith is indispensable. To guard against frauds, underwriters, almost universally, insist upon knowing whom they insure and how much is insured, whether by themselves or others. Hence the policy cannot be transferred, nor the insurance increased, without their consent. Is an assignment from one partner to another within the principle on which the prohibition is founded?

When underwriting for a firm the insurers are presumed to know, and to be satisfied with, each and every of its members. They are also presumed to know, that on the death of either of two partners, the survivor, for all purposes, becomes the sole legal, and, on a favorable state of the account, the sole equitable owner of the partnership assets. They know too that on a voluntary dissolution of the firm, if one partner has drawn out more than his share the other will thereby have been made the sole owner of the assets remaining. They therefore agree, in effect —for such is the legal inference—that a transfer of interest,

from one partner to the other, is within the original understanding, and that it shall form no objection, in case of loss, to the right of recovery. It is an assent, necessarily implied from the nature of the contract, and given in advance, and therefore requiring no subsequent notice.

The next difficulty in the case arises out of the want of notice, as is alleged, of the second insurance, in the Columbus company. These insurance companies, it appears, are frequently, and very naturally, more anxious to obtain premiums than to pay losses. "Let each man (say they, in the nota bene printed at the foot of every policy) induce his neighbor to insure, and the security and business can speedily be doubled." And in pursuance of the same system they establish agencies in numerous and even distant places, to such an extent that every person dealing with them would seem from their by-laws to have an "agent, (or rather ' *the* agent') of said company in his vicinity." Under the circumstances is not notice to such an agent notice to the principal ?

Every agent is presumed by law—and may also be presumed by all persons innocently dealing with him—to possess every power necessary, or naturally incident, to his agency. In the case, then, of an insurance company, systematically transacting, and even soliciting, business at points remote from its primary location, what powers might reasonably be assumed to have been conferred by it upon a person permanently established, and publicly held out to the world, as " the agent of the Genesee Mutual Insurance Company ?" or rather, for that is the only point necessary to be considered, was the power of receiving notices of other insurances on the same property and indorsing them on the policy, among the reasonably to be presumed powers ? That Dixon the insured, so supposed, is fully proved; and that Parks, the agent, entertained the same belief, is shown by his indorsement on the policy, signed " G. M. L. Park, agent." The policy provides that notice shall be given to the " company," but specifies no particular agent through whom it is to be given. It also provides that the insured " shall have the same indorsed" on the instrument, but it does not say by whom the indorsement

shall be made.   In the absence, then, of all express indication on the part of the company, what more natural on the part of the dealer, than to look to " the agent in his vicinity," the person held out, and publicly advertised as such by the company itself?

There is no pretense of fraud.   No attempt was made at concealment.   No effort to recover, from both companies in the aggregate, more than the actual loss.   The defense, therefore, on this point, is purely technical.   Such defenses, where there has been perfect fair dealing on the part of the assured, in modern times, are not favored by either judges or jurors ; nor are they in accordance, as I conceive, with the true interests of the insurers themselves, or with the general sense of the community. That sense is usually common sense.   And it cannot be too often repeated, that common sense and common honesty are the true sources of common law.

Our conclusion is that the verdict of the jury, taken subject to the opinion of the general term, was right, and that judgment thereon must be entered for the plaintiff.

[NEW-YORK GENERAL TERM December 5, 1853.   *Edmonds. Edwards, Mitchell* and *Roosevelt,* Justices.]

