## SUPREME COURT.

JOHN E. TALLMAN, respondent agt. THE ATLANTIC FIRE AND MARINE INSURANCE COMPANY, appellant.

Where a *policy of insurance* on chattels contains a clause that " in case of any sale, transfer, or change of title in the property insured, such insurance shall be void and cease," the execution of a *chattel mortgage* on the property by the insured to a third person, without notice to the insurance company, or their assent obtained, avoids the policy.

And the *sale* of the mortgaged property under the power contained in the mortgage to the mortgagee, and possession by him without notice to the insurer, avoids the policy.

Tallman agt. The Atlantic Fire and Marine Insurance Co.

Where the *insured has no interest* in the property *at the time of the loss*, the policy is void, although the loss is by the terms of the policy made payable to a third person having an interest in the property.

The transfer by one *partner* to another of his interest in the property insured, without any notice to the insurer, does not affect the policy

*Schenectady General Term, May,* 1865.

*Before* BOCKES, JAMES, ROSEKRANS *and* POTTER, *Justices.*

THIS is an action brought by the plaintiff upon a policy of insurance issued by the defendants to the firm of "Sturtevant, Sons & Co." upon certain machinery for the manufacture of paper, in Ogdensburgh, St. Lawrence county. The policy was issued 9th January, 1861, insuring to the extent of $2,000, the loss, if any, payable to the "Hon. W. C. Brown." The property in question had been purchased by the insured of Judge Brown, on the 13th of November, previous, by an executory contract, in which Brown covenanted to give immediate possession and did give such possession; and further covenanted, that after the payment of $2,500, the insured should have the title. On the contract "Sturtevant, Sons & Co." had paid all but about $1,000 at the time of taking said insurance. One Royal Tallman, son of plaintiff, was one of the firm of Sturtevant, Sons & Co. This policy was received 9th January, 1862, and in August of that year, S. L. Sturtevant, one of the said firm, sold out his interest in the said firm to Frederick J. Sturtevant, his brother, another member of said firm. No notice was given to the defendants of his transfer. After that the business which commenced 1st January, 1861, was carried on in the name of "Sturtevant, Son & Co." The firm remained the same, except that one son of Norman Sturtevant, the father, had retired after selling his interest to the other son. On the 21st November, 1862, Sturtevant, Son & Co., to wit: Norman Sturtevant, Royal Tallman and Frederick J. Sturtevant, executed a chattel mortgage to John E. Tallman, the plaintiff, upon the insured property for $1,539.24, as security for plaintiff's indorsement of certain notes to that amount

for the said firm. This mortgage was foreclosed and the property sold at public auction 18th April, 1863. Plaintiff became the purchaser, and took possession at the time of the purchase, and after that day Sturtevant Son & Co., had no possession of the property, and ceased to carry on the business; and from and after that day the business was carried on by the plaintiff; his son, Royal Tallman, acted as agent and manager of the plaintiff in conducting the business.

On the 9th January, 1863, the plaintiff, John E. Tallman, obtained a renewal receipt from the defendants' agent, upon $1,000, one-half the sum insured by the policy, for one year, and paid the premium therefor. The defendants' business with this firm was conducted by D. M. Chapin, their agent. The agent of the defendants who gave this receipt did not then know that one of the Sturtevants had retired from the firm, nor did he ever know how many of them composed that firm. Neither the defendants or their agent had knowledge that the said firm had mortgaged the property to John E. Tallman, the plaintiff, nor had the defendants or their agent any knowledge at the time of issuing such renewal receipt, of the foreclosure of the mortgage and of the transfer of the business to the plaintiff. The plaintiff subsequently to the day of obtaining this renewal receipt, effected two other insurances from other insurance companies, of which companies Chapin (defendants' agent) was also agent; one on the 26th January, 1863, in the North American Insurance Company of Hartford, of $1,500 on said machinery to plaintiff, "for whom it may concern," for three months, and $500 on rags for one month, and on the 26th of April of the same year, this was renewed for one year on the machinery; and on the day last named he obtained an additional insurance on the machinery of $1,500 in the Massasoit Insurance Company of Springfield. Notice of these last insurances was not given by the plaintiff to the defendants' company in

any other manner than that Chapin, who was the agent at Ogdensburgh of the defendants, and of all the companies in which policies were obtained on such machinery, did know, and he indorsed as agent of the two latter companies upon the policies respectively issued by them, notice of all the other insurances, including that by the plaintiff in this action, but did not make the same indorsement on the policy issued by defendants. On the 9th day of May, 1863, the mill and the insured property was destroyed or greatly injured by fire, exceeding the amount insured by the defendants. On the 29th May, 1863, Judge Brown sold and assigned to the plaintiff, in consideration of $1,061.50, his contract with Sturtevant, Sons & Co., and the policy of insurance in the defendants' company, and the loss which was payable to him, as by renewal receipt of 9th January, 1863, and all his right of claim to damage on loss by fire.

This action was afterwards brought by the plaintiff to recover for that loss; all other facts will sufficiently appear in the opinion. The cause was tried at the June circuit, St. Lawrence county, 1864. The jury found a verdict for plaintiff. A case was made containing exceptions, and the defendants appealed from the judgment entered on the verdict to the general term.

MYERS & MAGONE, *for defendants and appellants.*

I. Sturtevant, Sons & Company were not the absolute owners of the property at the time they effected the insurance, and no notice of their qualified interest was given to the defendant at the time the insurance was effected, nor was the qualifications of the interest stated in the policy as required by subdivision six of the conditions of the policy, and the omission rendered the policy void. There is no waiver of this condition, or pretence of waiver shown in the case. Even if it were true as urged by plain-

tiff's counsel that the agent D. M. Chapin, had full knowledge, such knowledge does not avail the assured in the absence of fraud on the part of the defendant. (*Jennings* agt. *The Chenango Mutual Ins. Co.* 2 *Denio*, 75 ; *Chase* agt. *Hamilton Ins. Co.* 20 *N. Y. R.* 52 ; *Wilson* agt. *Genesee Ins. Co.* 14 *N. Y. R.* 418.)

II. The assured, Sturtevant, Sons & Co., had no insurable interest in the property at the time of the destruction or injury thereof by fire. Sanford L. Sturtevant conveyed all his interest in the property to F. J. Sturtevant, October 6th, 1862, and the new firm of Sturtevant, Son & Co. succeeded to all the right and interest of the firm of Sturtevant, Sons & Co., and they conveyed all their interest in the property to John E. Tallman, November 21, 1862, by chattel mortgage, without notice to the defendant. Tallman foreclosed the mortgage and bid in the property at public sale, under the power contained therein, and thereby extinguished the equity of redemption of Sturtevant, Son & Co. in the insured property. It is expressly provided by the terms of the policy that " in case of any sale, transfer, or change of title in the property insured by this company, such insurance shall be void and cease." Without an interest in the property at the time of the loss, the insured cannot recover. (*Angell on Fire and Life Insurance*, § 55 ; *Murdock* agt. *The Chenango Co. Mutual Insurance Company*, 2 *Com. p.* 210 ; *Kent's Com. v.* 3, *p.* 344 ; *Hancox* agt. *Fishing Ins. Co.* 2 *Sumner*, 142 ; *The Saddler Company* agt. *Badcock*, 2 *Atk.* 554 ; *Lynch* agt. *Dalzell*, 3 *B. P. C.* 497 ; 23 *Pickering*, 418.) As to the legal effect consequent on the execution of the bill of sale by S. L. Sturtevant to F. J. Sturtevant, and the chattel mortgage, aside from the conditions of the policy, see *Angell on Insurance, page* 105, § 63, and authorities there cited.

It may be urged that the sale from S. L. Sturtevant to F. J. Sturtevant, or in other words the sale of the interest of one partner to another, without notice to the defendant,

although directly repugnant to the seventh subdivision of the conditions of the policy, does not avoid the policy. The supreme court so decided in *Wilson* agt. *The Genesee Mutual Ins. Co.* (16 *Barb.* 511), and the decision was incidentally approved in *Dey* agt. *Poughkeepsie Mutual Ins. Co.* (23 *Barb.* 623). We are not aware that the precise question has ever been passed upon in the court of appeals, and we entertain the opinion that whenever it is, such a transfer, in direct violation of the fair words of the contract of insurance, will be held an avoidance of the policy. We therefore urge upon the court in this case a decision upon this precise question.

It was urged upon the trial of this case at the circuit, that John E. Tallman acquired no additional interest in the insured property by the foreclosure of the chattel mortgage. That the mortgagee could not become the purchaser and thereby extinguish the mortgagors' equity of redemption, citing *The Buffalo Steam Engine Works* agt. *The Sun Mutual Insurance Company*, (17 *N. Y. R.* 401), as an authority in support of the doctrine. Upon a careful examination of the case, it will be observed that no such decision was necessary to an adjudication of the case, and that the judgment was reversed on other and entirely different ground. The case is most certainly far short of an authority. The precise question of the right of a mortgagee to become the purchaser at the foreclosure sale, was presented to this court in *Olcott* agt. *The Tioga Railroad Company* (40 *Barb.* 179), *Monroe general term*, 1862, and the court held that on "a sale to cut off this mere equitable right, the mortgagee may bid to protect the title already absolutely vested in him," and this decision of the general term was affirmed in the court of appeals, September, 1863 (*note a*, 40 *Bar.* 192). This decision was five years subsequent to the dicta in the 17 *N. Y. R.*, urged by the plaintiff's counsel. However, even if the assured had any equity of redemption in the property, it would not avail

him when his acts were in direct conflict with the terms of his contract, as a conveyance by way of chattel mortgage carries the whole legal title in the property to the mortgagee absolutely, (*Butler* agt. *Miller*, 1 *N. Y. R.* 496; *Ferguson* agt. *Lee*, 9 *Wend.* 258,) and upon the failure of the mortgagors to perform the condition of the mortgage, the mortgagee acquired an absolute title to the property. (*Brown* agt. *Bement*, 8 *Johns.* 86; *Ackley* agt. *Finch*, 7 *Cow.* 290.) In the suit of *The Western Massachusetts Ins. Co.* agt. *Riker* (2d *American Law Register, p.* 127), it was held that a policy of insurance, one of the conditions of which is that "in case of any sale, transfer, or change of title in the property insured, such insurance shall be void and cease," is avoided by a conveyance which is absolute in form, though given as security for a debt merely. And where the insurance is upon a single building, and the conveyance is of an undivided interest only, the conveyance avoids the whole policy, notwithstanding the interest of the insured remaining unconveyed is shown to exceed in value the sum insured.

III. The additional insurance effected by John E. Tallman, without notice to the company, avoided the policy, being a direct and positive breach of the contract on the part of the assured (*Mellon* agt. *The Hamilton Fire Ins. Co.* 17 *N. Y. R.* 109). It is expressly stipulated in the body of the policy, that "if the assured, or any other person or parties shall hereafter make any other insurance on the same property, and shall not with all reasonable diligence give notice thereof to this company, and have the same indorsed on this instrument, or otherwise acknowledged by them in writing, this policy shall cease and be of no further effect." No notice in writing is shown or even pretended —but it is assumed from the fact that D. M. Chapin was the agent of each of the several companies with whom the additional insurance was effected, that the defendant in this case is chargeable with notice of any fact that came

to Mr. Chapin's knowledge while acting not only out of defendant's employment, but in the employment of rival companies. There is no evidence whatever in the case that the defendant had knowledge that Mr. D. M. Chapin was the agent of any other company. The courts have not yet established, even by implication, that such knowledge of the individual is any notice whatever to the company, much less a written acknowledgment or indorsement as required by the terms of the policy. On the contrary, it has been expressly adjudicated that actual knowledge of the true state of the facts on the part of the agent, in the absence of fraud, will not relieve the assured against a breach of any of the conditions of the contract of insurance. (*Jennings* agt. *The Chenango Mutual Ins. Co,* 2 *Denio,* 75; *Chase* agt. *Hamilton Ins. Co.* 20 *N. Y. R.* 52; *Wilson* agt. *Genesee Ins. Co.* 14 *N. Y. R.* 418.) According to the conditions in the policy in this case, it is wholly immaterial who effects the additional insurance, as it avoids the policy by force of the contract, but in this case the plaintiff is also the party who effected the additional insurance.

IV. It was claimed on trial at the circuit, and may possibly be urged on argument, that as the loss was payable to Mr. Brown, and he conveyed his interest to the plaintiff, that the plaintiff is shielded not only from the acts of Sturtevant, Sons & Co., but also from his own acts. The legal rule fixed by judicial decision is the other way. It is expressly held that when the insurance is effected in the name of one, loss, if any, payable to another, the party to whom the loss is payable cannot recover unless the party named as the assured in the policy can. (*Grosvenor* agt. *The Atlantic Fire Ins. Co. of Brooklyn,* 17 *N. Y. R.* 391; *Id.* 401; *Bidwell* agt. *Northwestern Ins. Co.* 19 *N. Y. R.* 179.) In 17 *N. Y. R.,* *at page* 395, the court say: "It is the damage sustained by the party insured, and not by the party appointed to receive payment, that is recoverable from the insurers (*Macomber* agt. *The Cambridge Mutual Fire*

*Ins. Co.* 8 *Cush.* 133). The insurance being upon the interest of the mortgagor, and he having parted with that interest before the fire, no loss was sustained by him, and of course none was recoverable by his assignee or appointee. The right of such a party being wholly derivative, cannot exceed the right of the party under whom he claims." (*Carpenter* agt. *The Providence Washington Ins. Co.* 16 *Peters*, 495 ; *Foster* agt. *The Equitable Fire Ins. Co.* 2 *Gray*, 216.)

V. If the policy had life as a valid instrument, Royal Tallman was one of the assured thereby, and had contracted pursuant to the eleventh subdivision of the conditions of the policy that "if there appear any fraud or false swearing, the assured shall forfeit all claim under this policy." At folio 104 of the case, the defendant offered to prove false swearing on the part of Royal Tallman in support of his claim for loss under the policy, and the court excluded the evidence on the ground of immateriality, and the defendant excepted. This ruling of the court, assuming the policy to be valid, we deem clearly erroneous. Evidence which has a legitimate tendency to satisfy the jury that the contract was broken is properly admissible, and its exclusion is sufficient ground to reverse the judgment. (*Boyle* agt. *Coleman*, 13 *Barb.* 42 ; *Anthoine* agt. *Coit*, 2 *Hall Sup. C. R.* 40 ; *Lytle* agt. *Erwin*, 26 *How.* 491 ; *Lockwood* agt. *Thorne*, 18 *N. Y. R.* 286 ; *Id.* 293.)

VI. The court erred in overruling the defendant's objection to the admissibility of the proofs of loss furnished by Wm. C. Brown, and in admitting such proofs in evidence against defendant's several objections, especially in view of immediate notice to Mr. Brown that such proofs would not be accepted. The court also erred in admitting the proofs of loss furnished by Sturtevant, Son & Co., as they were not the party insured. No proofs were offered by Sturtevant, Sons & Co., but only by Mr. Brown and Stur-

tevant, Son & Co., entirely different parties· from those insured.

VII. The court erred in denying defendant's motion for a nonsuit at the close of the evidence on each of the several grounds claimed, and also erred in refusing to charge the jury as requested by defendant, but especially in refusing to charge that the neglect of Sturtevant, Sons & Co. to notify the defendant of their qualified interest in the property at the time of effecting the insurance, avoided the policy, and in refusing to charge that if the renewal receipt of 1863 was issued without the authority or assent of the assured, their verdict should be for the defendant. That the execution of the chattel mortgage was without notice to the defendant. These were questions of fact for the jury, and their withdrawal from the jury was error.

VIII. We are not unconscious of the uniform tendency of our courts to lean towards the plaintiff in actions arising on policies of insurance, often with the view of protecting innocent persons from loss growing out of carelessness in effecting· the insurance, or in doing some other act not in strict technical compliance with the letter of the contract of insurance. However, in this case there is a total want of compliance with the spirit as well as the letter of the contract. The title of the assured in the property was conditional; the assured neglected to disclose their true interest, although bound under pain of avoidance to do so. They contracted that in case of any additional insurance, either by themselves or any other person or parties, without the same being indorsed on the policy, or otherwise acknowledged by defendant in writing, the policy shall cease and be of no further effect. The plaintiff in this action effected other large insurances on the property. They contracted that in case of "any sale,· transfer or change of title in the property insured by this company, such insurance shall be void and cease." Yet notwithstanding this plain agreement, they convey the one to the

other, and mortgage to a stranger, without notice; suffer a foreclosure under the mortgage, see other and different persons in the actual possession of the property, neglect to give any notice to the company, propose the one to the other to feloniously burn the property, come into court and by accident or the exhaustion of the jury obtain only a Scotch verdict on the question of felonious burning. It is a case devoid of merit, and a judgment contrary to law, and should be reversed.

FOOTE & MAGONE, *for plaintiff and respondent.*

I. The purchaser under an executory contract of purchase is in law the owner, and has an insurable interest therein. (*Ætna Insurance Company* agt. *Tyler*, 16 *Wend.* 385; *McGivney* agt. *Phœnix Insurance Company*, 1 *Wend.* 85; *Phillips on Insurance*, §§ 174 *and* 180.)

2. A party effecting an insurance is not required to disclose the ownership unless "specially" requested by the company, and will recover according to his "real" interest. (*Kernochen* agt. *The N. Y. Bowery Ins. Co.* 17 *N. Y. Rep.* 428; *Niblo* agt. *The N. A. Fire Ins. Co.* 1 *Sand.* 551 *N. Y. Superior Court*; 18 *Pick. Mass.* 419.)

3. It is in proof that the state of the title was known to the agent, and disclosed to him by the payee of the policy at the time of effecting the insurance, and the non-indorsement of the state of the title on the policy was a waiver. (*Ames* agt. *The N. Y. Union Ins. Co.* 14 *N. Y. Rep.* 253; *McEwen* agt. *The Montgomery Insurance Co.* 5 *Hill*, 101; *Goit* agt. *National Ins. Co.* 25 *Barb.* 189; *N. Y. Superior Court*, 4 *Bosworth*, 179; *Wilson* agt. *Genesee Ins. Co.* 16 *Barb.* 511.) "An insurance company is chargeable with knowledge of all the facts stated by the applicant for insurance to the Company's agent respecting the applicant's title and interest in the premises." (*Hodgkins* agt. *The Montgomery Ins. Co.* 34 *Barb.* 213; *Ames* agt. *The N. Y.*

*Union Ins, Co.* 14 *N. Y. Rep.* 253.)   The agent acts for the company in communicating with the assured, and facts known to him are presumed to be known to the company, so far as such knowledge is necessary to the validity of the insurance (1 *Phillips*, § 556).   DENIO, J. (19 *N. Y. Rep. at page* 182), says :   " There is much greater latitude in applying a policy of insurance to the ' interest intended to be covered ' than in other contracts ;" and in *Bidwell* agt. *The North Western Ins. Co.* (24 *N. Y. Rep. p.* 303), GOULD, J. says :   " When not contradictory to the terms of the policy, it may be shown ' whose ' property it was intended to cover, and what ' property ' or ' interest ' it was intended to cover."

4. The respondent under the testimony would have been entitled to relief, and to have had the state of the title indorsed on the policy, had it been necessary for his recovery, even on the trial, and without a prayer to that effect. (*N. Y. Ice Company* agt. *North Western Ins. Co.* 23 *N. Y. Rep.* 357, *in opinion of* COMSTOCK, *J.* ; *Quick* agt. *Stuyvesant,* 2 *Paige,* 84; *Story on Contracts,* § 641.)

II. The interest of the agent, in order to defeat the policy, should be a legal and insurable interest, and not a mere expectation ; and it should be an interest sought to be covered by the policy (*Phillips on Insurance,* § 183).   The agent had had such an interest as assignee, but had sold it to Brown.

III: The reply to the appellant's exception, that the insurance was renewed without the authority of the assured, is answered by this,

1. That the preliminary proofs were made by Sturtevant, Son & Co., representing the insurable interest of Sturtevant, Sons & Co., and the policy thereby ratified and adopted.   (*Schedule No.* 7, *fol.* 172 ; *Phillips on Ins.* § 390).

2. The same was done by the payee, who held the covenants of Sturtevant, Sons & Co., to maintain such insurance for him (*Exhibit B, fol.* 166).

3. All of the co-partners were witnesses, and two of them called by the appellant, yet no testimony was offered by them that they did not authorize or request Tallman to pay for such insurance.

4. The appellant was in law justly refused the right to question the proper renewal of the policy, as bound by his contract, in the hands of the party in interest.

IV. The transfer by the retiring member of a firm to the remaining copartners of his interest in property insured, is not such a sale and transfer as contemplated by the conditions of the policy (*Wilson* agt. *Genesee Mu. Ins. Co.* 16 *Barb.* 511). But otherwise, if a new member had been introduced into the firm (*Dey* agt. *Poughkeepsie Mu. Ins. Co.* 23 *Barb.* 623).

2. The proof being that the partner had retired prior to the renewal, such renewal would inure to the remaining firm, if the retiring partner had not retained his insurable interest; much more where his insurable interest still subsisted, as in this case (*See authorities cited below*).

3. The partnership was dissolved as between the partners *inter se*, but not as between them and the payee of the policy, Wm. C. Brown, for their joint indebtedness to Brown still existed (*see testimony of Brown at folio* 70), and their joint insurable interest remained while their indebtedness to him remained (*Buffalo Steam Engine Works* agt. *The Sun Mu. Ins. Co.* 17 *N. Y. Rep.* 402, *in opinion of court*).

V. The 5th exception taken (*fol.* 145), by appellant, that the subsequent insurance effected by Tallman, if without notice to the defendant, vitiated the policy, is not tenable in law, as Tallman was only a mortgagee at best. (*Buffalo Steam Engine Works*, 17 *N. Y. Rep.* 402; *Ætna Ins. Co.* agt. *Tyler*, 16 *Wend.* 385; *Kenny* agt. *Clarkson*, 1 *John.* 385.)

2. Any mortgagee has the right to insure the property mortgaged on his own motion, and that without vitiating the policy of the mortgagor in his own hands, much less in

the hands of his assignee, as in this case. The contrary doctrine would be monstrous. The policy of the mortgagor or of his assignee would be vitiated only, where the mortgagor himself was a party to such subsequent insurance. Double insurance exists only where the insurable interests are identical. The policy issued by the appellant was on the property; the policies to Tallman were nominally on the property, but in fact were only upon his interest, and he was not bound to give notice even to his own insurers, much less to the insurers of the mortgagor, nor supposed to know of that insurance. (*Columbian Ins. Co.* agt. *Lynch*, 11 *John.* 232; *Mutual Safety Ins. Co. in Error* agt. *Hone*, 2 *Comstock*, 235.)

3. The proofs were clear and distinct that the agent had notice; that he was the agent of all the underwriters; that he stated such other insurance in writing, but for the reasons in law last above stated, reference to authorities on these heads is omitted, as not deemed important or necessary.

VI. The 6th request of appellant's counsel to charge the jury was founded on the 7th condition of the policy (last clause), folio 43.

1. A mortgage is not such a sale of property as is contemplated in the condition. (*Conover* agt. *The Sun Ins. Co.* 1 *N. Y. Rep.* 290; *Shotwell* agt. *The Jefferson Ins. Co. N. Y. Superior Court*, 5 *Bosw.* 247.)

2. A chattel mortgage is not even a conditional sale, it gives only an interest coupled with a power of sale, and through a chattel mortgage the mortgagee cannot acquire the title as purchaser under it. (17 *N. Y. Rep.* 402, *cited below in opinion of court*; 1 *N. Y. Rep.* 290, *cited ante.*)

VII. The appellant asked in his 7th exception (*fol.* 146) that the sale of the mortgaged property by Tallman, the mortgagee, to himself, should vitiate the policy. This was founded on the 7th condition of the policy, (*fol.* 43), and the court rightly refused to charge as requested; for,

1. Such sale did not destroy the insurable interest of the mortgagors.

2.. It did not transfer the title to Tallman, as he was only a mortgagee notwithstanding such sale ; and,

3. If any other person besides the mortgagee had become the purchaser, it would have foreclosed only the equity of redemption of the mortgagors so far ; the nominal title would still have been in Brown, and while the indebtedness of Sturtevant, Sons & Co. to Brown remained unpaid, and an obligation on and against them, the "insurable interest" of Sturtevant, Sons & Co., would have still remained to the extent of that obligation and indebtedness (see their covenants, folio 168, and the testimony of Brown at folio 70), and the policy would have been sustained to the extent of the indebtedness, had the policy been for so large an amount. This point and its subdivisions are all clearly stated and settled by the court of appeals in 17 *N. Y. Rep.* 402, *Buffalo Steam Engine Co.* agt. *The Sun Mutual Ins. Co., see the opinion of court, and see also The Ætna Ins. Co.* agt. *Tyler,* 16 *Wend.* 385.

VIII. The appellant's at folio 147, 8th exception to the charge, claim that the policy was void for the reason that Sturtevant, Sons & Co., had no insurable interest at the time of the loss. This point is sufficiently answered in the respondent's last point to wit : that the insurable interest remained while the covenants and indebtedness remained. (*See the contract, fol.* 166 ; *see assignment, fol.* 170 ; *see Brown's testimony, fol.* 70 ; *see* 17 *N. Y. Rep.* 402, *cited ante, particularly* ; *Phillips on Insurance,* § 287 ; *Gordon* agt. *Muss. Fire and Marine Ins. Co.* 2 *Pick.* 249 ; *Ætna Ins. Co.* agt. *Tyler,* 16 *Wend.* 385.)

By the court, POTTER, J. It was an express provision of the contract of insurance in this case, and so expressed in the policy, that " *in case of. any sale, transfer or change of title in the property insured, such insurance shall be void*

*and cease.*" The title of the insured property, as well as the possession of it, was changed from "Sturtevant, Son & Co." to the plaintiff, on the 18th day of April, 1863, prior to the loss by fire, which was on the 9th day of May following. There is no evidence in the case of the defendant's waiver of or consent to this change of title. The insured could not assign without the consent of the defendant. There is no evidence in the case that Sturtevant, Sons & Co. at the time of the fire had any interest in the insured property. As was said by the court of appeals in *Grosvenor* agt. *The Atlantic Fire Insurance Company of Brooklyn* (17 *N. Y. R.* 392), " The contract of insurance is a contract of indemnity. To sustain such an action upon such a contract, it must appear that the party *insured* has sustained a loss. This involves the necessity of an insurable interest at the time of the alleged loss." This contract was made by the defendants with Sturtevant, Sons & Co., without any express contract written on the face of the policy, and by the well settled law of insurance, the assurer must have an interest at risk, not only at the time of issuing the policy, but at the time of loss. If he have no such interest, there is nothing to be indemnified for (1 *Phillips on Insurance*, 115, §§ 172, 175). It must be such an interest that the peril may have a direct effect upon it, instead of a remote, circuitous or consequential effect. It is not sufficient even that the party have an insurable interest in the property ; he must have such an interest as the contract specifies (*Bidwell* agt. *North Western Ins. Co.* 18 *N. Y. R.* 179). I give no importance to the evidence that one of the firm of Sturtevant, Sons & Co., had previously transferred his interest to another member of the same firm. No stranger, not of the persons insured was brought in ; this does not come within the reason of the principle, as if the transfer was to a stranger. (16 *Barb.* 511 ; 23 *Id.* 623.) Nor does the fact that Judge Brown had an insurable interest in the property, and that the loss (if any) was payable to him,

change this principle. " Sturtevant, Sons & Co." at the time of the contract had an insurable interest in the property; it was that interest, no other, not Brown's that was insured. Brown might have insured his own interest, but he did not; he was content to take an assignment of the indemnity given to " Sturtevant, Sons & Co." upon their insurable interest. That was *his* contract. He consented to take the hazards incident to the contract made by the policy, and dependent upon the conditions therein expressed, to be observed by the insured, and to the law affecting *that* contract.

The plaintiff in this action succeeded to Brown's rights, but succeeded also, subject to all the contingencies to which Brown's contract was liable. The loss, if any, was payable to Brown *only*, upon conditions that the *insured* sustained loss, having fully kept their contract. This question was directly raised on the trial by the 7th and 8th propositions of the defendants' counsel, on motion for *non-suit*, at the end of the testimony. The seventh proposition was as follows: " That the sale of the property under the power contained in the mortgage to John E. Tallman, and possession thereof by him without such notice, avoided the policy." The eighth proposition to non-suit was as follows: " That the policy is void, because the assured had no interest in the property insured at the time of the loss." This eighth proposition is but the sequence of the seventh, or they may be regarded together as one. These propositions are repeated in substance by the defendants' counsel in his requests to the court to charge the jury as follows: The defendants' counsel asked the court to charge the jury:

6th. That the execution of the chattel mortgage " by ' Sturtevant, Sons & Co.,' to John E. Tallman, without notice to the defendants, or their assent obtained, avoided the policy, and their verdict should be for the defendant."

7th. That the sale of the mortgaged property under " the power contained in the mortgage to John E. Tallman, and

possession by him without notice to the insurer, avoided the policy, and their verdict should be for the defendant."

8th. " From the uncontradicted evidence in the case, the assured, ' Sturtevant, Sons & Co.,' had no interest in the property at the time of the loss by fire, and therefore the policy was void, and their verdict should be for the defendant."

The learned judge refused to non-suit upon each of the foregoing propositions for that purpose, and refused to charge the jury as requested in each of the above requests. To the refusal upon each of said propositions to non-suit and refusal to charge, and upon each of the requests to charge as above, the counsel for the defendants excepted. A verdict was rendered for the plaintiff for the amount of the last renewal receipt, with interest, amounting to $1,056.78. There were various exceptions to rulings in the case less important than those we have reviewed, and most of which were not well taken. If we are correct in the views we have taken of the law of insurance upon the question above reviewed, there must be a new trial for the errors we have shown.

With no disposition to favor mere technical objections taken by those corporations who thus grant these indemnities against loss, we are bound to declare the law as we find it. Contracts must be enforced, and undertakings executed according to principles of natural justice, and contracts for insurance are not exceptions to the rule. Insurance companies have a right to claim the same uniformity in the rule of construction of their contracts from the courts which is accorded to contracts with all other parties, and the courts must grant it.

There should, I think, be a new trial, with costs to abide the result.