BANKS and others, EXECUTORS of McCarthy, v. WALKER.

Where the title to real estate fails, the purchaser has no remedy in equity to recover back the price, unless there was fraud or deceit in the sale.

The only recognized ground of equitable interference to stay the collection of the unpaid purchase money, in the absence of fraud, is a failure of the consideration by reason of a defect of title clearly established, and an eviction from the possession of the land.

These facts may be shown as a defence, when the collection is attempted in chancery, notwithstanding the deed contains covenants of title.

An eviction is established by proof that at the time of the purchase, the lands sold were actually occupied under a valid hostile title, so that the purchaser could not obtain possession of the same, and whereby he never did obtain actual possession. *Withers* v. *Codwise*, note *a*, page 350.

In a suit for the foreclosure of a mortgage, the defendant set up that the mortgage was given for the purchase money, that the lands were conveyed to him without covenants, and that one claiming a paramount title had commenced an ejectment for the recovery of the lands, which was in vigorous prosecution, and if successful, would divest all the mortgagor's title except a dower right. The defendant entered into the possession of the lands at the time of his purchase, and had not been turned out or evicted.

The defence was overruled, and a decree made for the sale of the lands, and against the mortgagor for the deficiency, in case the proceeds of the sale were insufficient to pay his bond accompanying the mortgage.

A bill by the mortgagee against the mortgagor, and the adverse claimant of the land, would be multifarious.

Jan. 21; Feb. 19, 1845.

THE bill was filed by the executors of Eliza McCarthy, to foreclose a mortgage for $19,250, executed to her by Joshua Walker, on the 14th day of December, 1836. The premises mortgaged, are a lot with the buildings thereon, known as No. 352, in Broadway, in the city of New York, forming a part of the Carlton House. The lot was formerly the residence of Dennis McCarthy, who died intestate, seised of the same on the 29th of July, 1835. He left no children, and it was supposed that all his relations who would otherwise have taken by descent, were aliens at the time of his death. Eliza McCarthy, the testatrix, was his widow. On her petition, the legislature passed an act on the 25th of May, 1836, entitled, an act for the relief of Eliza McCarthy, (Laws of 1836, c. 481, p. 737,) by which the commissioners of the land office were to release to her the interest of the state by the escheat, on her paying into the treasury a proportion of the ascertained value, as required by law of widows in such cases ; and, provided that the real estate be sold under the direction of the Vice-Chancellor of the First Circuit, and the net proceeds, less the sum paid to the state, should be divided between her and Joanna Bant, who was an alien heir of D. McCarthy. Mrs. M. was to join in the sale and release her dower. Under this act and an order of the Vice-Chancellor founded thereon, a master sold the premises, and they were purchased by Mr. Walker for $38,000. Previous to the sale, Mrs. McCarthy paid to the treasurer of the state $1344 65, pursuant to the act for her relief, and received a release.

The bond and mortgage in question were executed to Mrs. McCarthy for the half part of the purchase money. She joined with the master in executing a deed to Mr. Walker, who was let into possession immediately, and has remained in the possession until the present time. The deed recited that all of the heirs of Dennis McCarthy were aliens, and that the premises had escheated to the state. It then recited the act of the legislature, and the proceedings under it, to and including the sale. There were no covenants of title in the deed, nor any other, except that Mrs. McCarthy covenanted against her own acts. For the other half of the purchase money, Mr. Walker gave a mortgage to Mrs. Bant, which he paid off before the suit was

commenced. In 1843, one Dennis McCarthy, residing at Rome, in the county of Oneida, claimed the premises, as the heir at law of D. McCarthy, deceased. It appeared that this Dennis was a native of Ireland, who emigrated to Canada, and then to this state, and that he was naturalized and became a citizen before the death of the elder Dennis McCarthy. The claimant alleged that his grandfather was a cousin of the father of D. McCarthy, of New York. In June, 1843, he commenced actions of eject-ment against the tenants of Mr. Walker, to recover the premises, claiming them in fee. These suits were put at issue, and were pending when the bill was filed, and at the time of the hearing. A commission had been taken out in the suit at law, to take tes-timony in Ireland.

On this claim being made, Mr. Walker ceased to pay interest on the mortgage, and in reference to this foreclosure, he made a formal request of the complainants, that they would make the adverse claimant a party to the suit, in order to have the title settled, and justice done to all.

The facts were set up by Walker in his defence to the foreclo-sure. Also that Mrs. McCarthy had falsely represented to him the state of the title. Testimony was taken in the cause, and it was heard on pleadings and proofs.

*W. S. Sears*, for the complainants.

*J. R. Whiting*, for the defendant.

The Assistant Vice-Chancellor.—The defence rests upon two grounds :—

*First*, that Mrs. McCarthy represented to the defendant on his purchasing the property, that all the heirs at law of her husband were aliens, whereby his real estate escheated to the people of this state ; whereas, in fact there was an heir of her husband resi-ding in this state, who had been naturalized, and was capable of inheriting his real estate ; and that Mrs. McCarthy well knew of the existence, title, and claim of this naturalized heir, when she made such representation.

The defendant has not sustained these allegations. There is

no proof whatever that Mrs. McCarthy knew, or had ever heard of the alleged claimant, or that she knew, or had any reason to believe that the recital in the defendant's deed, to the effect that the late Dennis McCarthy died leaving no heir capable of inheriting his estate, was untrue.

This puts an end to the point of misrepresentation ; even if it were proved that the claimant, (the Dennis McCarthy of Oneida county,) is an heir of the late Dennis McCarthy of this city.

But there is no such proof of heirship.

It is proved that this person was naturalized before the intestate's death, and that he claims as heir.    Moreover, he is called as a witness, (with what propriety I will not stop to inquire,) and testifies that *he believes* that his grandfather and the intestate's father were cousins.

The belief of the claimant does not advance the defendant a single step, in proving the validity of the claim.

This branch of the defence is therefore to be laid aside.

*Second.*  The remaining ground is that the mortgage in question was executed for a part of the purchase money of the property ; that the defendant has no covenants of title for his protection ; and that Dennis McCarthy of Oneida county, claims the land as the heir at law of the intestate, and has commenced actions of ejectment for its recovery, against the tenants of the defendant.    It is also alleged that this claim, if maintained, is paramount to the title derived from Mrs. McCarthy, or by means of the escheat ; that in such event the consideration of the mortgage will have wholly failed ; and that the collection of the bond and mortgage ought not to be enforced, until the trial and determination of that claim.

The defendant insists too, that the complainants ought to have made the claimant a party to this suit, so as to have settled all the questions in controversy.    This is an error.    The bill would have been multifarious, if it had brought in as a party, one claiming the title in hostility to both the mortgagor and the mortgagee.

There are some facts which should be mentioned before proceeding to the main question.

Mr. Walker became the purchaser of the property for $38,500, and gave to Mrs. McCarthy, this bond and mortgage for one-half

of the purchase money. The residue he secured to Mrs. Bant, and it appears that she has received it in full. Mrs. McCarthy had a right of dower in the property, which she conveyed to the defendant.

Mr. Walker has been in the possession of the premises from the time of the sale (December, 1836,) to the present time.

The question recurs, do these facts constitute any defence to the suit?

It is well settled, that where the title to real estate fails, the purchaser has no remedy in equity, to recover back the price, unless there was fraud or deceit in the sale. If he has taken the precaution to require covenants as to his title before paying the price, his remedy is in the courts of law. (2 Kent's Com. 473, 2d ed.; *Abbott* v. *Allen*, 2 John. Ch. R. 519, 523; *Gouverneur* v. *Elmendorf*, 5 ib. 79; *Chesterman* v. *Gardner*, 5 ib. 29; *Bates* v. *Delavan*, 5 Paige, 300; *Denston* v. *Morris*, 2 Edw. Ch. R. 37; *Leggett* v. *McCarthy*, 3 ib. 124; *Tallmadge* v. *Wallis*, 25 Wend. 107; *Edwards* v. *Bodine*, 26 ib. 109.)

In this case, no failure of title is shown, no eviction. There is simply a claim set up by a stranger. It is not shown to be a valid claim, so that there is no defect of title proved. But it is apprehended that the claim may turn out to be well founded.

I can find no authority or good reason for sustaining such a defence.

In *Bumpus* v. *Platner*, (1 John. Ch. R. 218,) the question was presented on a bill to have a bond and mortgage delivered up, on the ground of the want of title, and the failure of the consideration. Chancellor Kent dismissed the bill. He said that there was no case of relief on this ground when possession has passed and continued, without any eviction at law under a paramount title; and that such an eviction was an indispensable part of the plaintiff's claim to relief here, on the mere ground of failure of consideration. And he added, " it would be without precedent and dangerous in principle, to arrest and bar the recovery of the debt, while the purchaser is still in possession under the purchase deed, and there has been no eviction at law."

In *Abbott* v. *Allen*, before cited, the same great jurist examined

the point anew, on a similar bill, where the defendants were proceeding at law upon the bond, and were foreclosing the mortgage by advertisement, under the statute.  The Chancellor reiterated the doctrine which he had sustained in *Bumpus* v. *Platner*, that a purchaser of land who is in possession, cannot have relief here against his contract to pay, on the mere ground of defect of title, without a previous eviction.

It may be suggested that there were covenants of title in *Abbott* v. *Allen*.  That fact did not influence the Chancellor's view of the principle which I have just stated.  And it can make no difference in any case where the mortgage is prosecuted in chancery.  Whether there be covenants or not, the only recognized ground of equitable interference to stay the collection of the unpaid purchase money, is the same, to wit, a total failure of the consideration by reason of a defect of title clearly established, and an eviction from the possession of the land.  If there be covenants in such a case, equity would interfere where the collection was attempted in this court, to prevent circuity of action.

The case of *Johnson* v. *Gere*, (2 Johns. Ch. R. 546,) is relied upon as sustaining this defence.  It was an *ex parte* allowance of an injunction by the Chancellor out of court, and if it were in any respect conflicting, would not be received to set aside the authority of the strongly contested and well considered case of *Abbott* v. *Allen*, which was decided less than a month before.  I suspect that in *Johnson* v. *Gere*, it was at least apparent, that the widow of Pierson under whom the mortgagor purchased, had only a life estate, and that thus there was a total defect of title established.  Be that as it may, I know too well my own liability to err in granting injunctions *ex parte*, to place much reliance upon the opinions of any judge, however eminent, declared on such an allowance, especially when it is brought forward in opposition to his judgment in contested suits.

Chancellor Kent in his Commentaries, expresses the rule on this subject, substantially, as he decided it in *Abbott* v. *Allen*.  He refers to that decision, but does not cite as an authority, the case of *Johnson* v. *Gere*, (2 Kent's Com. 471, 472.)

In *Leggett* v. *McCarthy*, 3 Edw. Ch. R. 124, the Vice-Chancellor recognized and acted upon the decision in *Abbott* v. *Allen*,

in a stronger case for the mortgagor than the one now before me, for the defence in the answer, (not put in issue,) was that the vendor was not seised and had not a good title to the premises. In the subsequent case of *Withers* v. *Morrell*, 3 ib. 560, he held the same doctrine, upon an admission that the title to a portion of the premises had wholly failed; so far, as to decree a foreclosure and sale, leaving the mortgagee to his remedy at law upon the bond for any deficiency.

In *Withers* v. *Codwise*, decided by the Vice-Chancellor at the same time with the case last cited, but not reported, there was not only a total defect of title shown, but an actual eviction equivalent to a legal eviction, the mortgagor never having been in possession, and the land being held adversely under the true title at the time of the sale, and ever afterwards; and the Vice-Chancellor permitted these facts to be presented as a defence to the suit, so far as it sought to charge the mortgagor personally for the debt.(a)

---

(a) The case of *Withers* v. *Powers, Codwise and others*, came before Vice-Chancellor McCoun in October, 1841, and was decided January 17th, 1842. The bill was filed to foreclose a mortgage on four lots of land in the village of Williamsburgh, executed for the purchase money by Powers to D. Codwise on the first day of June, 1835, and by the latter assigned to the complainant with his guaranty of its payment. The complainant proceeded to a hearing, when the usual decree was directed for a foreclosure and sale, and for the payment of the deficiency by Powers upon his bond accompanying the mortgage. The defendants had answered, setting up that no title had been conveyed by the deed to Powers, which defence was overruled at the hearing. They then applied to the court on affidavits showing a discovery of material facts since the hearing, to stay the entry of the decree and for leave to file a further or supplemental answer.

It appeared by the answer and the affidavits, that the four lots were part of a large tract which the complainant and others claiming to own in fee, had in 1835, vested in Mr. Codwise as a trustee to sell at auction in their behalf. The purchaser of the four lots, omitting to complete his purchase, Mr. Codwise concluded to take them for his own benefit with the parties' assent, and paid the portion of the purchase money required to be paid in hand. In order to place the transaction in a suitable form, he then as trustee conveyed the lots to W. P. Powers, received his bond and mortgage for the balance of the purchase money, transferred the same to the complainant towards his share of the proceeds of the whole sale, with a guaranty of payment, and then received a conveyance of the lots from Powers subject to the mortgage. Mr. Codwise paid interest for several years, and a part of the principal, before he discovered the defect in the title.

The Vice-Chancellor well observed in *Leggett* v. *McCarthy*, that the application of the principle must be the same, whether the mortgagor was the complainant or the defendant, in the particular suit in which the question arises.

This being so, there is no authority upon which I can sustain this defence, and there is authority against it which is conclusive upon this branch of the court.

I am aware that hypothetical cases have been put, and suggestions made by several judges, in arguing the various points connected with this subject, which lend some sanction to the conclusion derived by the defendant from *Johnson* v. *Gere.* But the controlling decisions are clear, that until there be an ascertained failure of title, and an eviction from the possession, the purchaser

---

In point of fact, the parties who conveyed to him in trust, had no title to the four lots. One Peter Ferrier obtained the true title in 1807, and had claimed the lots ever since, adversely to the complainant and those associated with him. They were then vacant lots, and were supposed by Codwise and Powers in 1835, and from thence till after the hearing, to be vacant and unoccupied. But before the trust deed was executed to Mr. Codwise a person claiming under a lease from Ferrier erected a shop on the premises, and several years before the hearing, a stable was erected thereon by another tenant of Ferrier's ; both of which buildings were occupied from the time of their erection till the motion was made, under Ferrier's title, and in hostility to that of Codwise. The lots were assessed by the municipal authorities as the property of Ferrier in 1831 and 1832, and again in 1840, and were not taxed or assessed in any other name. Ferrier or his agent paid all the taxes and assessments imposed thereon.

Neither Codwise or Powers ever had any actual possession or occupancy of the lots or any part of them, by themselves or by any person claiming under them.

The motion was resisted on the grounds that the application came too late ; that Mr. Codwise having taken the title as trustee was chargeable with knowledge of its defects ; and that there was no fraud pretended, no covenant of title, and no eviction shown, without which the defendants if let in, could not be relieved.

*L. H. Sandford,* for D. Codwise.

*D. Marvin,* for Powers.

*J. Slosson,* for the complainant.

The Vice-Chancellor, made an order allowing the defendants to file a supplemental answer stating the facts, on payment of the costs of the hearing and subsequent proceedings ; unless the complainant would enter a decree for the foreclosure and sale leaving his claim upon the mortgage and guaranty to be enforced at law. The complainant never prosecuted his claim further against Codwise or Powers.

The decision of the Vice-Chancellor established that there was an eviction under the circumstances of the case.

will not be relieved against his bond and mortgage for the unpaid purchase money. For the rule at law, see *Whitney* v. *Lewis,* 21 Wend. 131; *Lattin* v. *Vail*, 17 ibid. 188.

So in the civil law, the buyer, so long as he is in the undisturbed possession of the thing sold, cannot withhold payment on the plea of want of title in the vendor, or otherwise rescind the contract. (Cod. Lib. 8 tit., 45, l. 3; *Brown* v. *Reves*, 19 Martin's La. Rep. 235.)

There may be hardship in this rule, but there is no more than is presented in the more frequent instances, where the purchase money has all been paid before any defect of title is suspected, and the purchaser, protected by no covenants, is remediless.

It is one of those hardships which our law cannot obviate, consistently with the principle which it lays down as the foundation of contracts of sale; *caveat emptor.*

Conceding for the purpose of the argument, that the claimant, Dennis McCarthy, inherited the land and will ultimately recover it; this is not after all, a case of the total failure of the consideration.

Mrs. McCarthy had a dower right in the premises which was relinquished to the defendant at the time of the sale. If she were sixty years of age, this interest was worth about one-third of the amount of the mortgage.

Besides, the possession is, and always has been uninterrupted in the mortgagor, and it is impossible for the court to say, as the case stands, that Mr. Walker has not obtained all that Mrs. McCarthy contracted to sell or undertook to convey to him.

The complainants are entitled to the usual decree, for a foreclosure and sale of the lands, and for payment of the deficiency by the mortgagor.