HENRY JOHNSON, Respondent, *v.* HENRY H. HATHORN, Executor of ROWLAND P. COOLEY, deceased, Appellant.

A vendee, who accepts a conveyance, in pursuance of an oral agreement, is bound on his part to comply with the terms of such agreement, though it might otherwise have been invalid under the statute of frauds.

An undertaking to transfer bank stock, to the amount of $5,000, in payment for a purchase, is not satisfied by a transfer of half-paid stock to that nominal amount, when it is accepted on the supposition, fraudulently induced by the assignor, that the certificate represented full-paid stock.

Though the language of a stock certificate may be such as to put the transferee on inquiry, he is not chargeable with negligence, if he makes inquiry of the assignor, who, knowing the truth, deceives him.

One who uses words in a deceptive and double sense, for the purpose of misleading the party with whom he contracts, is bound by them in the sense in which he intended them to be understood.

The surrender of an instrument creating an obligation, if fraudulently procured by the obligor, does not extinguish the obligation.

An appellate tribunal has no authority to reverse a judgment, by reason of defects in the pleadings, which neither surprised nor misled the appellant, and which affected none of his substantial rights.

An executory agreement, whether written or oral, is not merged in a subsequent writing by way of partial execution, unless the latter is accepted in substitution or in full performance of the original contract.

APPEAL from the affirmance at General Term in the fourth judicial district, of a judgment in favor of the plaintiff for $3,063.18, rendered on the trial before Mr. Justice BOOKES, without a jury, at the Saratoga Circuit.

The complaint alleged, in substance, that in March, 1860, the plaintiff owned a lot and dwelling house, with the furniture therein, and agreed, *in writing*, to convey the same to the defendant Cooley for the sum of $5,525; that Cooley, the original defendant, agreed to purchase this property at that price, and to pay $5,100 of the amount by transferring to the plaintiff fifty shares of the stock of the Mutual Bank of Castleton, Vermont, of $100 each, and amounting to $5,000, then alleged by the defendant to be held and owned by him, with the accrued dividends at the rate of eight per cent per annum, amounting for three months to $100, and the remaining $425 in cash; that in the negotiations which

resulted in the agreement, the defendant represented to the plaintiff that he held scrip for fifty shares of the stock, amounting to $5,000, and undertook to guarantee a dividend of eight per cent for the current year, and to have the stock transferred on the books of the bank in part payment of the purchase-money; that the defendant afterward, and, as the plaintiff then supposed, in good faith, procured a certificate in the plaintiff's name for fifty shares of stock of $100 each, "subject, nevertheless, to the payment of $50 on each share, in such sums and at such times as may be required agreeably to law;" that the plaintiff was entirely ignorant of the form of stock certificates, having never before owned bank stock, and relying on the integrity of the defendant if the meaning of this clause was that he was obliged to take more stock, if the payments therein referred to were required, and the defendant represented that such was the meaning, and that the scrip represented fifty shares of stock of the value of $5,000; that relying upon the defendant's representations, and believing that he was thus to receive fifty shares of stock, of the value of $5,000, with accrued dividend, the plaintiff conveyed and delivered the property, and afterward received the certificate in part payment; that he afterward discovered the fraud and imposition which had been practiced upon him by the defendant; that the stock was never in fact of a greater par value than $2,500, and that but $2,500 had been paid therefor by the defendant. The complaint charged that these facts were known to the defendant when he made these representations, and that his purpose was thereby to defraud the plaintiff in the sale out of the sum of $2,500.

The relief claimed was, that the defendant be adjudged to pay that amount with interest to the plaintiff, with a further prayer that the same might be declared to be an equitable lien upon the property.

The material allegations in the complaint were denied in the answer.

On the trial some objections were taken to the admission of evidence, but the principal question was one raised by the

motion to dismiss the complaint, on the ground, among other things, that the case proved, if any, was different from that set out in the complaint.   The counsel for the plaintiff applied for leave to amend the complaint, if it should be deemed necessary by the court, by conforming the same to the facts proved.   No affidavit was made that the defendant had been prejudiced or misled; and the motion to dismiss was denied, without ordering any formal amendment.

The findings of the judge and his conclusions of law were, in substance, as follows:

1. That the plaintiff, in March, 1860, owned the property in question in the village of Saratoga Springs.

2. That an *oral* agreement was made between him and the defendant, by which he was to sell and the defendant to purchase the same for the sum of $5,525; of which amount $5,000 was to be paid in stock of the Mutual Bank of Castleton, and $525 in cash.

3. In pursuance of this agreement the plaintiff, on the 28th of March, 1860, conveyed the property to the defendant, who accepted the same, and took and retained possession; the agreement on the part of the plaintiff being fully performed.

4. The cash payment was made by the defendant's check for $450, and the allowance of $100 on account of the accrued dividend.   The defendant, at the same time, gave the plaintiff the following instrument:

"In consideration of the sale and conveyance of certain real estate on Circular street by Henry Johnson and wife to me, Rowland P. Cooley, I hereby covenant and agree to transfer five thousand dollars of the capital stock of the Mutual Bank, Castleton, Vermont, which now stands in my name on the books of the bank, unto the said Henry Johnson; which transfer shall be made so as to take effect on the first day of April next.   And I hereby covenant and guarantee that said bank will deliver semi-annual dividends of four per cent for the current year.   And I further covenant and guarantee that the amount of capital stock of said bank,

upon which it commenced and continues business, is paid in, and now held and owned unimpaired by any losses.

Witness my hand and seal, this 28th day of March, 1860.
———————————— [L. S.]

Witness, Charles S. Lester."

[Note. — The signature to the above exhibit had been cut out when offered and received in evidence.]

5. Thereupon, and on the 5th of April, 1860, the defendant made a transfer of fifty shares of the said Mutual Bank to the plaintiff, and procured by such transfer a scrip, or certificate of stock, to be issued by said bank, as follows:

"MUTUAL BANK.
"No. 32.                 50 SHARES.               $5,000.

"Be it known that Henry Johnson, of Saratoga Springs, New York, is entitled to fifty shares, of one hundred dollars each, of the capital stock of the Mutual Bank, transferable only by the said Henry Johnson or his legal representatives, by the formal transfer prescribed by the directors, which must be duly recorded on the books of said bank, subject, nevertheless, to the payment of fifty dollars on each share, in such sums and at such times as may be required agreeably to law.

"Given under the seal of said bank at Castleton, Vermont, [L. S.]   this fifth day of April, 1860.

"T. W. RICE, President.
"C. M. WILLARD, Cashier."

6. This scrip or certificate of stock was exhibited and delivered to the plaintiff on or about the 12th day of April, 1860, and he thereupon surrendered to the defendant the agreement above set out, dated March 28, 1860, and the defendant then executed and delivered to the plaintiff an instrument, as follows, to wit:

"This witnesseth that I, the subscriber, do agree and covevant with Mr. Henry Johnson, of Saratoga, and do hereby bind myself, my heirs and legal representatives, to indemnify and save harmless the said Johnson from any liability to be called upon to pay any further installments for

Vol. III.     17

capital stock in the Mutual Bank at Castleton, Vermont, and in the contingency that the officers of said bank should hereafter declare an installment (and order it paid in with intent to increase the capital) thereof, and the said Johnson should neglect or refuse to pay such installment, the intent and meaning of this instrument is to be, on reasonable notice given, to indemnify and save harmless the said Henry Johnson from refusing or neglecting so to do.

"ROWLAND P. COOLEY.

"Saratoga, April 12, 1860."

7. At the time of the making and entering into the oral agreement above stated, and at the time of the delivery of the deed and transfer in pursuance thereof, and of the making and delivery of the instrument above set out, dated March 28, 1860, and also at the time of the delivery to the plaintiff of the said scrip or certificate of bank stock, and of the instrument dated April 12, 1860, the plaintiff understood and believed, and the defendant was, at those times, and at all times, aware of such understanding and belief of the plaintiff, that he was to have, and was entitled to have and receive, and by the delivery of the scrip to him, was, in fact, receiving stock in said bank to the amount of $5,000, par value, fully paid in.

8. The plaintiff would not have transferred the property to the defendant had he not understood and believed that he was to receive therefor stock in said bank to the amount of $5,000, par value, fully paid in, and he, in making such transfer, acted on such understanding and belief, to defendant's knowledge; nor would the plaintiff have accepted of said scrip in performance and satisfaction of his agreement with the defendant, had he not, at the time of receiving the same, understood and believed that he was receiving stock in said bank to the amount of $5,000, par value, fully paid in, with the accruing dividends thereon. And the defendant induced and gave him so to understand and believe; whereas, in truth and in fact, only fifty per cent of said stock had been paid in, to defendant's knowledge.

9. Though the plaintiff fully performed the agreement, between him and the defendant, on his part, yet the defendant, though requested so to do, did not perform on his part by paying to the plaintiff $5,525, to wit: $5,000 of bank stock, at par value, fully paid in, of the Mutual Bank at Castleton, Vermont, and $525 in cash; but he paid to the plaintiff only the bank stock evidenced by the scrip or certificate above, and in the complaint set out, and $425 in cash; on which stock, however, semi-annual dividends of four per cent on the amount actually paid in have been declared and realized by the plaintiff from and since January 1st, 1860.

I decide, as matter of law, on the facts above found:

First. That, by the true construction of the oral agreement between the parties, the defendant was to pay the plaintiff, on his conveying and transferring the property, real and personal, to the defendant, the sum of $5,525, to wit: $5,000 of bank stock, par value, fully paid in, of the Mutual Bank, Castleton, Vermont, and $525 in cash.

Second. That, notwithstanding the plaintiff fully performed the agreement on his part, yet the defendant has not performed the same on his part, nor has he been in any way relieved or discharged therefrom.

Third. That the transfer of stock, evidenced by the scrip or certificate above, and in the complaint set out, was equivalent, by way of payment and performance of said agreement, to only $2,500 of bank stock, par value, fully paid in, with the accruing dividends on that sum from and after January 1st, 1860.

Fourth. That the defendant is liable and justly indebted to the plaintiff, on the facts found and stated, in the sum of $3,063.18 at this date.

Fifth. That the plaintiff is entitled to judgment against the defendant herein for said sum of $3,063.18, and costs.

Exceptions were taken, by the defendant, raising the questions considered in the opinion; and the judgment having been affirmed at the General Term, an appeal was taken to this court.

*A. Pond,* for the appellant.

*William A. Beach,* for the respondent.

Porter, J.   On the facts found by the referee, the plaintiff was entitled to judgment.   The original agreement for the sale of the property was not in writing, but it was performed by the plaintiff when he executed the conveyance, and the defendant, who took the benefit of the contract, was bound to fulfill it on his part. (*Thomas* v. *Dickinson,* 2 Kern., 364.)   He agreed to pay $5,525 as the price; and $2,500 of this amount has neither been paid by him nor released by the plaintiff.   Five thousand dollars of the purchase-money was to have been paid in stock of the Mutual Bank of Castleton.   He paid half the amount in that stock, and the delivery and acceptance of the scrip reduced, *pro tanto,* the amount of his liability, but did not extinguish it as to the residue.

At the time the conveyance was executed and delivered, he was not prepared to transfer the stock as he had agreed; and he induced the plaintiff to accept a covenant, the purpose of which, on his part, evidently was to merge the original agreement, under the pretense of fulfilling it, and by this device to defraud the plaintiff of $2,500 of the purchase-money.   To this end, he gave the plaintiff to understand, as well at the time of the original agreement, as at each of the subsequent transactions, that the scrip he was to receive represented, in fact, full-paid stock to the amount of five thousand dollars; and this he knew to be false.   He afterward induced him, by the same fraudulent means, to surrender this covenant on receiving a certificate, nominally for fifty shares of one hundred dollars each, but really representing only half that amount of stock.

If the liability of the defendant depended on his written covenant, he would still be responsible for the remaining $2,500 of stock.   In that instrument he agreed to transfer to the plaintiff five thousand dollars of the stock of the Mutual Bank, and this agreement he has only in part performed.   He can derive no aid from the adroit and slippery language of the subjoined guaranty.   One who uses words

in a deceptive and double sense, for the purpose of mislead-ing the party with whom he contracts, is bound by them in the sense in which he intended they should be understood. (*Hoffman* v. *Ætna Ins. Co.*, 32 N. Y., 405; *Barlow* v. *Scott*, 24 N. Y., 40; *Mowatt* v. *Lord Londonsborough*, 3 Ell. & Black., 334.)

The surrender of the covenant, having been procured by the fraud of the defendant, cannot shield him from liability. It is true that the terms of the stock certificate put the plaintiff upon inquiry; but he made the inquiry promptly, and the defendant, knowing the truth, deceived him. (*Mead* v. *Bunn*, 32 N. Y., 275; *Williamson* v. *Brown*, 15 N. Y., 354; *Sharp* v. *Mayor of New York*, 25 How., 390; *Bradley* v. *Bosley*, 1 Barb. Ch., 125; *Cooke* v. *Nathan*, 16 Barb., 342.)

But there was no merger of the parol agreement to pay the stipulated price. The subsequent writings, signed by the defendant, neither superseded nor extinguished his previous undertaking; and oral evidence was properly received to show the terms of the unwritten contract, and to expose and defeat the fraud, attempted to be practiced by means of these writings, under color of carrying out his original engagement. (*Hutchins* v. *Hibbard*, decided in this court at the last De-cember Term; *Bradley* v. *Bosley*, 1 Barb. Ch., 152; *Johnson* v. *Miln*, 14 Wend., 195; *Morris* v. *Witcher*, 20 N. Y., 41.)

Upon the state of facts established by the proof and found by the judge, the motion to dismiss the complaint was prop-erly denied. We have no authority to reverse the judgment, by reason of defects in the pleadings, which did not affect the substantial rights of the defendant. (Code, § 167.) The aver-ment in the complaint that the original agreement was in writing was not sustained by the proof; but we are bound to treat the variance as immaterial, in the absence of affirmative evidence that it misled the adverse party. (Code, § 169.) The gravamen of the allegation was, that such an agreement was made, and the question whether it was written or oral was unimportant, except so far as it affected the mode of proof. The judge was therefore at liberty, without directing an amendment, to find the facts in accordance with the evidence.

(Code, § 171.)   The findings were within the scope of the allegations, and there was no failure of proof within the meaning of the Code.   Upon the facts alleged, the plaintiff was entitled to equitable as well as legal relief; and, as he demanded both, the judge was right in awarding that which seemed appropriate to the case made by the proof. (*Emery* v. *Pease*, 20 N. Y., 62, 64; *Bedford* v. *Terhune*, 27 How., 422; *Lounsbury* v. *Purdy*, 18 N. Y., 515; *Byxbie* v. *Wood*, 24 id., 607.)

Other exceptions were taken on the trial which it is not material to discuss, as they are all plainly untenable.   The cause was well tried, and the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.