ALBERT O. WHITTEMORE, RESPONDENT, *v.* JAMES B. FARRINGTON, APPELLANT.

*Exchange of lands — Quit-claim deed — no remedy under, to recover price, where there is no deceit or fraud — Equitable interference — Rescission of contract.*

The plaintiff and defendant agreed, orally, to exchange lands. The defendant gave plaintiff a quit-claim deed, which he accepted, and expended some $1,300 on the land. Afterward he discovered that there was a recorded mortgage for $850 on the land; there was, however, no evidence that either party knew of it; nor was there any proof of any fraud or deceit on the part of the defendant.

When the plaintiff sought to have the contract rescinded, he could not restore actual possession, having leased his land, and the lessee being in possession.

*Held,* 1. That the plaintiff had no remedy in equity to recover back the price, there being no deceit.

2. That the moneys expended on the land by the plaintiff could not be recovered of the defendant, there being no concealment, surprise or imposition, the mistake or ignorance, whether mutual or unilateral, giving no foundation for equitable interference.

3. That the court could not replace the parties as they were before the contract, and therefore erred in giving a judgment, which, instead of being a rescission, altered the original contract, and enforced it as altered.

APPEAL from a judgment of the Special Term in favor of the respondent and against the appellant.

The complaint in this action alleges, in substance, that the plaintiff agreed, orally, to give the defendant two pieces of land and $300 in exchange for a piece of land on which was a saw-mill, the $300 to be secured by the plaintiff's note; that this agreement was with the understanding that the defendant would give plaintiff a good title to the saw-mill property, free and clear of all incumbrances, for a good title to plaintiff's pieces of land; that the defendant directed the plaintiff to go on the land and make improvements as he desired; that he did go on and make improve-

ments to the extent of $1,300 or more; that the defendant sent plaintiff a quit-claim deed; that the plaintiff objected; that the defendant alleged that it gave him a perfect title; that in that belief the plaintiff had it recorded; that the plaintiff gave the defendant warranty deeds for his two pieces; that afterwards the plaintiff discovered a recorded mortgage on the saw-mill property, executed by an owner prior to defendant, on which there is due $850; that he then applied to defendant for a warranty deed, which defendant refused; that he has leased the property, and cannot deed back except subject to the lease and with the improvements, which he is willing to do on equitable terms. He asks for a rescission of the contract; that the whole transaction be set aside as a fraud and surprise; or that the defendant discharge the lien, or for other relief.

On the trial of the action, the facts were found substantially as follows: That the plaintiff conveyed the two pieces of land, in consideration that the defendant would convey him the saw-mill property; that the defendant gave plaintiff only a quit-claim deed; that the plaintiff gave the defendant warranty deeds; that neither before, nor at the time when the plaintiff received the quit-claim deed, did either of the parties know or mistrust that there was any mortgage on the property; and that both parties believed, when the quit-claim deed was given by defendant and received by plaintiff, that it conveyed a perfect title, and that there was no mortgage on the land; that, in fact, there was a mortgage thereon executed by a prior owner, and duly recorded prior to the agreement, on which a balance is due; that there was mutual ignorance and mutual mistake.

The court adjudged that the defendant might reconvey, by warranty deed, the two pieces of land; and, if he should do so, then the plaintiff should quit-claim the saw-mill property; and then that there should be a reference to decide how much the defendant should pay the plaintiff for the improvements put on by him, and the plaintiff should have judgment therefor.

That if the defendant should not, within the time prescribed, execute the reconveyances to the plaintiff, then that the plaintiff should have judgment against the defendant for a specified sum,

being the difference between the amount due on the mortgage and the $300 still unpaid on the agreement of exchange.

The defendant appeals.

*Hart & McGuire*, for the appellant.

*M. M. Mead*, for the respondent.

LEARNED, P. J.:

We must first notice that the court does not find, as alleged in the complaint, that there was an agreement to give a warranty deed. It is found only that there was an agreement to exchange the two pieces of land for the saw-mill property, and to pay $300. And that there was mutual mistake and ignorance of the existence of the mortgage. Nor is it found that the plaintiff refused to accept the quit-claim deed.

Nor is it suggested that there was any fraud or misrepresentation on the defendant's part. The defendant had bought the premises at a foreclosure sale only a few days previously, and had taken a sheriff's deed.

The negotiations between the plaintiff and the defendant began before the sale, when the defendant was only the holder of the mortgage under which the property was to be sold. And it was suggested, when the agreement was made, that the plaintiff should take the sheriff's deed. The plaintiff had also a mortgage on the same premises, subsequent to that which was foreclosed, and under which the defendant purchased. And the plaintiff hoped by this exchange to save something on his mortgage.

"It is well settled, that where the title to real estate fails the purchaser has no remedy in equity to recover back the price, unless there was fraud or deceit in the same. If he has taken the precaution to require covenants as to his title, before paying the price, his remedy is in the courts of law." (*Banks* v. *Walker*, 2 Sand. Ch., 344; 2 Kent Com., 473.) "Where the purchaser has neglected to take such covenants, and there is no fraud or misrepresentation in the case, he has no remedy to recover back the purchase money upon a subsequent failure of title." (*Bates* v. *Delavan*, 5 Paige, 300.) The same doctrine is found in *Tallmadge* v. *Wallis* (Ct. of Er., 25 Wend., 106).

Again, it was decided in *Bumpus* v. *Platner* (1 Johns. Ch., 218) that there could be no case for relief, where possession had passed and continued *without eviction under a paramount title*. In the present case the plaintiff is still in possession and undisturbed, so that he would have no cause of action, even if the deed to him contained covenants of warranty.

The plaintiff urges that a contract made under an injurious mistake, is voidable and will be set aside. But the cases which he cites are not analogous to the present. *Boyd* v. *De la Montagnie* (8 S. C. N. Y. [1 Hun], 696), was a case of misrepresentation by the husband to the wife. *Gillett* v. *Borden* (6 Lansing, 219), was a case where in the written contract, by mistake, forty-four feet instead of fifty-four were reserved. The contract was reformed so as to express the agreement of the parties. *Nevius* v. *Dunlap* (33 N. Y., 676) was the case of reforming a contract. In *Haverly* v. *Becker* (4 N. Y., 169), the defendant, in consideration of the conveyance to him by Dietz, agreed to pay a judgment owing by Dietz to the plaintiff. The parties had supposed it to be a lien when it was not. The plaintiff recovered, for the defendant was bound to pay the consideration of the conveyance. In *Graves* v. *Brinckerhoff* (6 N. Y. S. C. R., 630), there had been a sale at so much per acre. The surveyor had made a mistake in the computation of the number of acres. The plaintiff had therefore paid too much, which he was allowed to recover back, as money paid by mistake. In *Belknap* v. *Sealey* (14 N. Y., 143), there was a contract to purchase, for a definite sum, land said to contain eight acres. It proved to contain only four. The contract was set aside, no deed having been executed, and the plaintiff was allowed to recover back the part of the purchase money which he had paid. One ground of the decision given by the court is, that the contract was still executory.

Now, it will be seen that not one of these cases is opposed to the doctrine of *Banks* v. *Walker* (*ut supra*), and of the cases similar to that. The cases cited by the plaintiff are those where, for mistake, an executory contract has been set aside, or reformed, or where money paid by mistake has been recovered back, or where there has been some fraud. No case is cited where after a conveyance has been executed, and in the absence of fraud or deceit, the grantee

has recovered the purchase money on a failure of title, unless by action upon covenants in the deed.

There is another difficulty in this case. The plaintiff seeks to have the contract rescinded. This means to replace the parties as they were before the contract; but the judgment does not do this; he has recovered a judgment against the defendant for over $500, so that instead of rescinding the contract, the court is altering the original contract and enforcing it as altered. But the plaintiff may say that the decision gave the defendant the option to rescind. Not at all. It gave him the option to exchange back again the parcels of land, and to pay the plaintiff for the improvements he had put on the saw-mill. But the defendant may not wish for these improvements, he may not be able to pay for them, they may be useless to him, or even worse than useless. It is no reinstating the parties in their former condition, when one is compelled to pay the other some $1,300. Furthermore, when this action was commenced, the plaintiff had leased the property, and the lessee was in possession; and the plaintiff could not restore actual possession. And to see that this would be inequitable, we must remember that the defendant has been guilty of no concealment, fraud or deceit. Why should he be punished? As is said by Judge STORY: "Where each party is equally innocent, and there is no concealment of facts which the other party has a right to know, and no surprise or imposition exists, the mistake or ignorance, whether mutual or unilateral, is treated as laying no foundation for equitable interference." (1 Story Eq. Jur., § 151.) "A like principle applies to cases, where the means of information are open to both parties." (Id., § 149.) A recorded mortgage is as open to one party as the other. Again, there was no binding contract between these parties, except the deeds themselves. Every thing before the deeds was oral. What, then, is to be reformed? The quit-claim deed? But the plaintiff knew it was a quit-claim; objected, and then accepted it. The defendant says that the plaintiff had agreed to take the sheriff's deed, which would have been only, in effect, a quit-claim, and that, therefore, he accepted the quit-claim of the defendant. At any rate, it was accepted knowingly. Can the court now reform it, or compel the defendant to give a warranty deed, a thing which he never agreed to do? I think not. If the plaintiff

had felt unwilling to carry out the oral contract, unless he could have a warranty deed from the defendant, he should have put himself on that ground. It is now too late for him to ask the court to give to the quit-claim deed, which he accepted, the effect of a warranty.

The judgment should be reversed and a new trial granted, costs to abide the event.

BOCKES, J.:

The judgment directed by the learned judge at Special Term cannot, I think, be upheld. Even admitting that it was expressly agreed between the parties that the plaintiff was to have a warranty deed, and if the defendant be held to answer as if his deed to the plaintiff contained a covenant of warranty as to title, still there has been no eviction. The plaintiff has not yet been disturbed in his possession, nor has he been compelled to pay any sum whatever to secure and retain his possession. There was no ground, therefore, for a money judgment against the defendant. Nor was it, nor is it, practicable to frame a decree, recognizing the defendant's rights and yet compelling him to pay the plaintiff for his improvements, put on the premises since he entered into possession. For those improvements the defendant cannot, in any view of the case, be compelled to pay. They were put on without his privity by the plaintiff, and at the peril of the latter, in so far as he can have a right to claim compensation for them from the defendant. The most that the plaintiff can claim is to have his title to the land assured to him. The details of the judgment are, therefore, manifestly erroneous. The only question is, whether justice and equity may not be worked out by a modification of the decree. According to the findings of the court at Special Term (and these findings, I think, are supported by the proof), the parties contracted in mutual ignorance of the mortgage which rested on the defendant's lands, and with the understanding, on the part of both, that the plaintiff should have a good title from the defendant, free from incumbrances. The agreement to exchange property, and its execution in so far as it was executed, were based on this understanding. The deed from the defendant to the plaintiff was accepted by the latter with the understanding, on the part of both, that it did convey such title. Other-

wise the defendant was guilty of a gross fraud. If that be so it was equivalent to an agreement, on the part of the defendant, that the plaintiff should have such title; and the defendant now holds and insists upon retaining all he acquired under it. Now should he not be held to performance on his part? He has in no way been discharged from this understanding, which has, under the circumstances, the binding force of an express agreement.

It was held in _Johnson_ v. _Hathorn_ (3 Keyes, 126), that a vendee, who accepts a conveyance in pursuance of an oral agreement, is bound, on his part, to comply with the terms of such agreement, though it might otherwise have been invalid under the statute of frauds; and further, that an executory contract, whether written or oral, is not merged in a subsequent writing by way of partial execution, unless the latter is accepted in substitution or in full performance of the original contract. The plaintiff accepted the deed (holding him to an acceptance) with the understanding, on the part of both parties, that it carried good title. The defendant received full consideration and still holds it, on the faith of such understanding. He is therefore bound in justice and equity to make it good. Then how can this result be effected? It may be effected by a modification of the decree, so as to require the defendant to give a warranty deed of the premises, as of the date of his quit-claim, and, by its terms, to have effect as of that date. It can be readily drawn thus to limit its effect. But this can be required only on the payment to him by the plaintiff of the $300, and interest to be computed from that time. The delivery of the deed and the payment of the money were, in so far as we are able to see, to be simultaneous acts. It may be said that this will leave the plaintiff without indemnity against the mortgage covering the property, save under the warranty deed. But this was all he contracted for, and is all the court can give him. All he can claim is that he have a deed with covenant of warranty, or its equivalent. He must look to that for his indemnity.

In my opinion the judgment should be modified as above suggested.

Present — LEARNED, P. J., BOOKES and BOARDMAN, JJ.

Judgment reversed, new trial granted, costs to abide event.