HOFFMAN & PLACE v. ÆTNA FIRE INSURANCE CO.

The effect of the usual proviso against sales, in policies of insurance, is not to interdict sales of the owners as between themselves, but only sales of proprietary interests by the parties insured to third persons.

The *dicta* to the contrary, in the case of *Murdock* v. *Chenango Insurance Co.* (2 Comst., 210), disapproved.

In the construction of contracts, words are not to be taken in their broadest import, when they are equally appropriate in a sense limited to the object the parties had in view, and their apparent intent as deduced from the whole instrument.

Where the language of a promisor may be understood in more senses than one it is to be interpreted in the sense in which he had reason to suppose it was *understood* by the promisee.

If it be uncertain, in view of the general tenor of an instrument and the apparent object of the parties, whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most *beneficial* to the promisee.

Conditions and provisos in policies of insurance are to be construed strictly against the underwriters, as they tend to narrow the range and limit the force of the principal obligation.

Every intendment is to be made against a construction of a contract under which it would operate as a snare.

Where a fluctuating stock of goods was insured by a mercantile firm, and one of its members retired, it was held that goods subsequently purchased by the continuing members of the firm, who acquired the interest of the retiring partner, were within the protection of the policy.

THE action was on a policy of insurance for $6,000, issued in February, 1861, to Hoffman, Place & Co., of New York, covering their stock of merchandise, including not only their own goods, but those held by them in trust or on commission, or sold but not delivered, in their brick and marble store in Broadway. The policy contained, among other things, a printed proviso that it should be null and void, "if the said property shall be sold or conveyed." The insurance was renewed in February, 1862. On the 7th of March following, Silvernail, one of the partners, retired from the business, selling out his interest to Hoffman & Place, by whom the business was continued. They subsequently, with the written consent of the company, removed the business and stock to their new brick

and marble store in Duane street. The loss occurred on the 9th of April; and the company declining to pay, the present action was brought.

It was tried in the Superior Court before Judge MONELL, and the jury found a verdict for the plaintiffs. The judgment was affirmed on appeal, and the present appeal is from that decision.

The principal questions of law raised on the trial were, whether the transfer avoided the sale, and if not, whether goods afterwards added to the stock were within the protection of the policy.

*John H. Reynolds*, for the appellants.

*Grosvenor P. Lowrey*, for the respondents.

PORTER, J. The weight of judicial authority in this State is against the doctrine that a policy issued to a firm is forfeited by a transfer of interest as between the parties assured. As a contrary opinion has prevailed to some extent, it may be well briefly to retrace the history of this question in our courts.

It first arose in 1840, on the trial of the case of *McMasters* v. *The Westchester Mutual Insurance Co.* (25 Wend., 379). The policy was issued to McMasters & Bruce. Evidence was given tending to show that the interest of Bruce in the partnership property was assigned before the loss to McMasters. At the circuit, it was held by Judge RUGGLES, as matter of law, that such a sale by one partner to another would not relieve the insurers. The plaintiffs recovered, and a new trial was denied; but it did not become necessary to consider this question on review, the jury having found specially that the interest was not in fact transferred.

The case of *Howard & Ryckman* v. *The Albany Ins. Co.* was decided in 1846, and turned on a mere question of misjoinder, arising on a demurrer to the defendants' plea that before the loss one of the plaintiffs transferred to the other his interest in the property insured. It was held that under these circumstances, a *joint* action could not be maintained

by the original parties; and from this decision Chief Justice BRONSON dissented. (3 Denio, 301.)

The case mainly relied on by the appellants, is that of *Murdock & Garrett* v. *The Chenango Mutual Insurance Company*, decided in this court in 1849. (2 Comst., 210.) It did not involve the question now under discussion. The property insured was a building, owned at the date of the policy by the plaintiffs as tenants in common. Garrett afterwards conveyed to Murdock, the other plaintiff, his undivided half of the property. The company indorsed a consent in writing to the conveyance, with a stipulation that the policy should remain good to Murdock as sole owner of the property. Under a special provision in the charter of the company, this gave the grantee, as the sole party in interest, a right to maintain the action in his own name—equivalent to that now given by the general law to the real party in interest. (Laws of 1836, 314; 42, sec. 7.) The building was afterwards destroyed by fire, and an action was brought in the joint names of Murdock and Garrett. It was claimed by the defendants and adjudged by the court that the misjoinder of Garrett was fatal, as he had no interest in the action. Mr. Hill, who argued the cause for the defendants, insisted that, as Murdock was the sole owner at the time of the loss, the action might and should have been brought by him alone. No question was made, and under the stipulation indorsed on the policy none could be made, as to the liability of the company to Murdock for the entire loss, unless absolved from it on other grounds. Opinions were delivered by Judges CADY, STRONG and JEWETT, all holding the *misjoinder* to be fatal. The opinion of Judge STRONG was put on the specific ground that Murdock succeeded to all the rights of Garrett, and the action should, therefore, have been brought in his own name. Judge CADY conceded that it was not material to inquire whether Murdock might not have maintained an action in his own name. The observations on this question in the course of his opinion are, therefore, not to be regarded as views expressed by the court, but as the *obiter dicta* of the learned judge. They are entitled to high consideration as the views

of an able and eminent jurist, but they have not the controlling force of authority.

In 1850, the direct question now involved was first discussed and decided in the Supreme Court. (*Tillou* v. *Kingston Mut. Ins. Co.*, 7 Barb., 570.) The policy in that case had been issued in 1842, to the firm of Tillou, Doty & Crouse. In 1844, it was assigned by them to one Ketchum, with the written consent of the company, as security for the payment of a mortgage on the premises. Subsequently, and before the loss, Crouse, without the consent of the company, sold his interest in the property to the other two partners. It was provided by law, in the act of incorporation, that any policy issued by the company should become void, *upon the alienation, by sale or otherwise*, of the property insured. (Laws of 1836, 44; 466.) The action was brought in the names of the original parties, for the benefit not only of the assignee of the policy, but also of the then owners of the property. The court adjudged that a sale by one joint owner to another, of his interest in the property insured, was not a cause of forfeiture within the intent and import of this provision. They also held — the decision in 2 Comstock not having then been reported — that the recovery could be sustained, not only for the amount due to the assignee of the policy, but also for the surplus due to the owners.

When the case came before this court on appeal, the judgment was sustained to the extent of the interest of the assignee, who, in virtue of the consent of the company, was entitled to sue in the names of the original parties, as the action was commenced before the adoption of the Code. The judgment was, of course, modified by striking out the excess recovered by the owners; as it had been settled in the case of *Murdock* v. *The Chenango Insurance Co.* that, to the extent of their claim, the misjoinder of Crouse as a plaintiff was a fatal ground of objection. The opinion of the court, delivered by Judge Foot, shows the modification to have been made on the authority of that decision. Through an oversight, such as occasionally happens in all reports, the point of the decision was misapprehended in

the note of the case on which the appellants rely. (5 N. Y., 405; 17 id., 399.)

The precise question was again presented for judgment in 1853, in the case of *Wilson* v. *The Genesee Mut. Ins. Co.* (16 Barb., 511). The insurance was on the mercantile stock of Dixon & Co., a firm in Michigan, consisting of A. H. Dixon and Samuel G. Goss. Shortly afterward the firm was dissolved. Dixon succeeded, by purchase, to the interest of Goss, and continued the business on his own account down to the time of the fire. The action was brought by Wilson, to whom Dixon subsequently assigned the claim. Two defenses were interposed. The first was, that the policy was forfeited by the transfer from one partner to the other, of his interest in the property insured; the other was, that it was forfeited by Dixon's afterwards obtaining a further insurance on the goods, without the written consent of the company; though such a consent was obtained from their local agent in Michigan. The court overruled both defenses, and held that the policy was not forfeited, either by the sale made by the retiring partner, or by the subsequent insurance effected by his successor in interest, with the consent of the Michigan agent.

The case was heard in this court, on appeal, in 1856. (4 Kern., 418.) The counsel for the defendant insisted, as a principal point, that the sale by one partner to the other avoided the policy, and cited the cases of *Howard* v. *The Albany Ins. Co.*, *Murdock* v. *The Chenango Ins. Co.*, and *Tillou* v. *The Kingston Ins. Co.*, as authorities supporting the proposition. Judge COMSTOCK, who delivered the opinion of the court, did not deem it worthy even of a passing notice, but disposed of the case on a subsequent and subordinate point. He was of opinion, and the court so held, that the consent of the Michigan agent to the further insurance by Dixon, was not binding upon the company, as it appeared, by his power of attorney, that his authority was limited to receiving applications for insurance. No member of the court intimated a doubt of the correctness of the adjudication, that the sale by one partner to the other did not

invalidate the policy; and of the seven judges who took part in the decision, two were in favor of a general affirmance.

In 1857, the Supreme Court had occasion incidentally to reaffirm the proposition, that the validity of a policy is not affected by transfers of interest as between the parties assured, in the case of *Dey* v. *The Poughkeepsie Mut. Ins. Co.* (23 Barb., 627).

The attention of this court was drawn the following year to the decision of the Supreme Court, in the case of *Tillou* v. *The Kingston Ins. Co.*, that transfers as between the assured are not within the prohibition against alienation; and that decision was approved by Judge PRATT, who delivered the prevailing opinion. (*Buffalo Steam Engine Works* v. *The Sun Mut. Ins. Co.*, 17 N. Y., 412.)

It is quite apparent, therefore, that, in this State, there is a decisive preponderance of judicial authority against the recognition of a sale by one to another of the assured, as cause of forfeiture within the meaning of the proviso. But if the authorities were in equipoise, and the solution of the question depended on general reasoning and the application of settled and familiar principles of law, our conclusion would be in accordance with that of the court below.

The terms of the proviso are, that the policy shall be null and void, "if the said property shall be sold and conveyed." But these words are, themselves, vague and indeterminate. Are they to be understood in their largest sense, without restriction or limitation? Clearly not; for we find, on referring to other portions of the policy, that it was issued to the assured as merchants, and that it covered a stock of goods which it was their business to sell from day to day. Is the proviso applicable to the particular goods in the store at the date of the insurance? Such a construction would not only defeat the purpose of protecting a fluctuating stock, but it would annul the policy at once, for it would bring the first mercantile sale at the counter within the terms of the condition. What description of sales and conveyances, then, did the parties contemplate when this provision was framed?

Evidently such, and such only, as would transfer the proprietary interest of those with whom the insurers contracted, to others with whom they had not consented to contract. They testified their confidence in each of the assured, by issuing to them the policy; but they did not choose to repose blind confidence in. others who might succeed to the ownership. If the assured parted with the possession, as well as the title to the goods, the insurers knew, of course, that their liability would cease; but they were aware that, in the exigencies incident to business, parties often retain the control, posssession and apparent ownership of goods, after parting with all their title. To guard against such contingencies, they chose to provide for the forfeiture of the policy on the transfer of the title to others, even though the business should continue to be conducted by the assured.

It is suggested that the proviso may have been designed to secure the continuance in the firm, of the only member in whom the insurers reposed confidence. The only evidence of their confidence in either, is the fact that they contracted with all; and the theory is rather fanciful than sound, that they may have intended to conclude a bargain with rogues, on the faith of a proviso that an honest man should be kept in the firm to watch them. Certainly, nothing appears in the present case to indicate that all the assured were not equally worthy of confidence; and it is not to be presumed that, in any case, underwriters would deliberately insure those whose integrity they had reason to distrust.

The policy in question having been issued to a mercantile firm, the company must be deemed to have had in view the fluctuating nature of a partnership business, and the changes of relative interest incident to that relation. These might be very important to the assured, though wholly immaterial to the risk. It is manifest that mere variations in the character and amounts of the interests of the assured as between themselves, did not constitute the mischief at which the proviso was aimed. If the applicants had originally objected to the form of the policy, on the ground that the effect of the clause might be to prevent the increase by a partner of his

interest from one-fourth to one-third of the business, by purchase from the other members of the firm, the answer would undoubtedly have been that such a change was not within the operation or intent of the proviso.   There is probably not a business firm in the State, which would accept at the usual rates, a policy declaring *in terms* that the premium should be forfeited and the insurance annulled, by a mere change of interest as between the partners.   In this instance there is no such declaration; and an *implication* so repugnant to the evident design of the contract, is not to be deduced from the unguarded use of general words, if they can be fairly limited to the appropriate and obvious sense in which they were employed by the parties.

The design of the provision was, not to interdict all sales, but only sales of proprietary interests by parties insured to parties not insured.   If the words were taken literally, a renewal of the policy would be required at the close of each day's sales.   Indeterminate forms of expression, in such a case, are to be understood in a sense subservient to the general purposes of the contract.   It is true that the language of the proviso against sales, was not guarded by a special *exclusion* of changes of interest as between the assured, or of the sales of merchandise in the usual course of their business; but this was for the obvious reason that there was nothing in the tenor of the instrument to denote, that the *application* of the clause to such a case was within the contemplation of the underwriters.   "The matter in hand is always presumed to be in the mind and thoughts of the speaker, though his words seem to admit a larger sense; and therefore the generality of the words used, shall be restrained by the particular occasion." (Powell on Contracts, 389; *Van Hagen* v. *Van Rensselaer,* 18 Johns., 423.)   Thus, in an action on a life policy, containing a proviso that it should be void "in case the assured should die by his own hands," it was held by this court, that though in terms it embraced all cases of suicide, it could not properly be applied to self-destruction by a lunatic, as there was no reason to suppose that such a case was within the purpose of the clause or the contemplation of the parties.

(*Breasted* v. *Farmers' Loan and Trust Co.*, 4 Seld., 299.) "All words," says Lord BACON, "whether they be in deeds, or statutes, or otherwise, if they be general, and not express and precise, shall be restrained unto the fitness of. the matter and the person. (Bacon's Law Maxims, Reg., 10.)

Reading the proviso as it was read by the parties, it is easy to discern the purpose of its insertion. It was to protect the company from a continuing obligation to the assured, if the title and beneficial interest should pass to others, whom they might not be equally willing to trust. Words should not be taken in their broadest import, when they are equally appropriate in a sense limited to the object the parties had in view. (22 N. Y., 443; 4 Kernan, 615, 622; 5 Duer, 340; 7 Hill, 255; 1 Duer on Ins., 163, § 8.)

The terms of the policy were not such as would naturally suggest even a query in the minds of the assured, whether a transfer of interest as between themselves would work a forfeiture of the insurance, and relieve the company from its promise to indemnify both — the buyer as well as the seller — the premium being paid in advance, and the risk remaining unchanged. One of two joint payees of a non-negotiable note would hardly be more surprised to be met with a claim, that by buying the interest of his associate he had extinguished the obligation of the maker to both.

It is a rule of law, as well as of ethics, that where the language of a promisor may be understood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was *understood* by the promisee. (*Potter* v. *Ontario Ins. Co.*, 5 Hill, 149; *Barlow* v. *Scott*, 24 N. Y., 40.)

It is also a familiar rule of law, that if it be left in doubt, in view of the general tenor of the instrument and the relations of the contracting parties, whether given words were used in an. enlarged or. a restricted sense, other things being equal, that construction should be adopted which is most *beneficial* to the promisee. (Coke's Litt., 183; Bacon's Law Maxims, Reg., 3; *Doe* v. *Dixon*, 9 East, 16; *Marvin* v. *Stone*, 2 Cowen, 806.) This rule has been very uniformly

applied to conditions and provisos in policies of insurance, on the ground that though they are inserted for the benefit of the underwriters, their office is to limit the force of the principal obligation. (*Yeaton* v. *Fry*, 5 Cranch, 341; *Palmer* v. *Western Ins. Co.*, 1 Story's R., 364, 365; *Petty* v. *Royal Exchange Ins. Co.*, 1 Burrows, 349.) In the case first cited, the action was for a marine loss, and one of the issues was, whether a recovery was barred by the entry of a ship into a blockaded port, such ports being excepted by the policy. The court held, that though the case was within the terms, it was not within the intent of the exception; and that as the risk contemplated in the clause was merely that of capture, the rule of liberal construction must be applied in favor of the promisee. The reason assigned by Chief Justice MARSHALL was, that " the words are the words of the insurer, not of the insured; and they take a particular risk out of the policy, which but for the exception would be comprehended in the contract."

The appellants also encounter another rule equally at variance with the proposition they seek to maintain: " Conditions providing for disabilities and forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced." (*Livingston* v. *Sickles*, 7 Hill, 255; *Catlin* v. *Springfield Ins. Co.*, 1 Sumn., 434; *Breasted* v. *Farmers' Loan and Trust Co.*, 4 Seld., 305.) This rule, applicable to all contracts, has peculiar force in cases like the present, where the attempt is to seize upon words introduced as a safeguard against fraud, and make them available to defeat the claim of the assured on the theory of a technical forfeiture without fault. If the policy admits of such a construction, it is due to the dexterity of the draftsman, and not to a meeting of the minds of the parties. There was nothing in the tenor of the contract to indicate to the owners that under this proviso the promise of indemnity might fail, though they did not part with the property; nor to warn them that the insurance did not protect the entire stock of goods in their store, whether they bought it from each other or from third parties. Even after

the transfer of interest as between themselves, there was nothing in the policy to apprise them that their rights under it were forfeited, and that without a new insurance their property was unprotected. The general words employed are too indeterminate in their import, to create a disability so profitless to the company and so injurious to the assured.

It was suggested, rather than insisted, on the argument, that the company may have intended to make the proviso more stringent and comprehensive than it was assumed to be by the plaintiffs; and that they are bound by the words to which they assented, even if they did not fully apprehend their effect. The obvious answer is, that it would be just to neither party to assume that the insurers aimed at drawing customers into the payment of premiums, by holding out illusory promises, couched in vague and deceptive terms, for the very purpose of enabling them to elude liability. Nothing but the clearest expression of such a design would justify the assumption, that an executed contract was intended by either party as a snare. If technical forfeitures could be sustained by such intendments, the effect would be to weaken private confidence in commercial faith, and occasion just solicitude as to the security of important rights.

The other exceptions presented in the case were argued with great ability by the respective counsel, but the disposition to be made of the more important of these is mainly dependent on our views of the principal question. They are fully considered in the opinion delivered by Judge ROBERTSON in the court below, and it is sufficient for us to express our concurrence in his conclusions.

The appellants seem to suppose that there is a technical embarrassment on the question of damages, growing out of the fluctuating character of the stock, and the continuance of the business by the remaining members of the firm, who succeeded, under the transfer, to the interest of the retiring partner. Looking to the nature and design of the contract of insurance, we find no such embarrassment. The language of this court, on a former occasion, is equally appropriate in the case at bar: "It was manifestly the intention

of the parties to the policy, that it should cover, to the amount of the insurance, any goods of the character and description specified in the policy, which, from time to time during its continuation, might be in the store. A policy for a long period upon goods in a retail shop, applies to the goods successively in the shop from time to time. Any other construction of a policy of insurance, upon a stock in trade continually changing, would render it worthless as an indemnity." (*Hooper* v. *Hudson Fire Ins. Co.*, 17 N. Y., 425.)

The plaintiffs were parties to the contract made with the defendant. They were conducting the business contemplated by the terms of the policy. The insurance was intended to cover the mercantile stock of which the assured were proprietors, stored, from time to time, in the building in which that business was conducted. There was no substantial change material to the risk, and clearly none within the intent of the proviso. Each member of a partnership firm, as Lord HARDWICKE said, is "seized *per my et per tout*" of the common stock and effects. (*West* v. *Skip*, 1 Vesey Sen., 242.) This interest of each and all, the policy in question was designed to protect; and its language, fairly construed, is in harmony with this intent. There is no reason why the full measure of agreed indemnity should be withheld from the plaintiffs, who were owners at the date of the insurance, and sole owners at the time of the loss. (*Hooper* v. *Hudson River Ins. Co.*, 17 N. Y., 425, 426; *Wilson* v. *Genesee Mut. Ins. Co.*, 16 Barb., 511; *Jefferson Ins. Co.* v. *Cotheal*, 7 Wend., 73; Code, § 111.)

The judgment should be affirmed, with costs.

Judgment affirmed.