## BEARNS *vs.* THE COLUMBIAN INSURANCE COMPANY.

In time policies, the rules as to deviation do not apply to the same extent as in voyage policies.

Under time policies, the mere intention to deviate is not sufficient to avoid the policy, although during the period of the violation of the warranty, the vessel is not covered by the policy.

Time policies were issued by the defendants upon the bark Cora, and her freight; the policy on the vessel being for one year from June 19, 1862, and that upon the freight being for one year from June 20, 1862. The policy on the vessel contained a warranty not to use the Min river (in China) higher than the anchorage below the Kimpai pass. The bark sailed March 29, 1863, from Shanghai to Newchang, at the mouth of the Lian Ho river, in the northern part of China. In entering the Lian Ho river, the vessel was dam-

aged, but the injuries were not such as to make her unseaworthy. On the 4th of May, 1863, the bark took in a cargo for Fu-chau-fu, a port on the Min river, and sailed therefor. On leaving Newchang she sustained more serious injury. After she left the Lian Ho river, she sustained no further disaster. On the 13th of June, 1863, she arrived at Pagoda anchorage, ten miles above Kimpai pass, on the Min river. Upon a survey held there, it was found that she was badly injured, and it was decided to dismantle and sell the vessel, which was done. It being admitted that the injuries were sustained in entering the mouth of the Lian Ho river, on the voyage to Newchang, and on leaving that port at the same place, during the period the vessel was covered by the policy;

*Held* that upon these facts there was nothing to warrant the court in holding that the insured was not entitled to recover for damage done to the vessel while she was not in violation of any of the provisions of the policy. That it was not in any way within the prohibition either to enter or leave the port of Newchang and the Lian Ho river; and whatever was intended after the vessel left that port could in no way affect the plaintiff's right of recovery for any damage previouly incurred.

*Held, also,* that the policy upon the *freight* being intended to cover the freight during the whole period of insurance, and not confined to the period when the vessel sailed from the Lian Ho river, the warranty was violated when she entered the Min river above the Kimpai pass. That it mattered not what was determined upon afterwards, or what befell the vessel while that violation existed. The policy ceased to cover the freight from that time. And the vessel having been sold while in the river, and before the violation of the warranty terminated, the plaintiff could not recover for freight thereafter.

THIS action is brought to recover on two policies of insurance on the bark Cora, and for the freight. The policies were time policies. The policy on the vessel being for one year from the 19th of June, 1862, that insuring the freight being for one year from the 20th of June, 1862.

The policy on the vessel contained a warranty not to use the Min river, in China. The policy on the freight contained a warranty not to use the Min river higher than the anchorage below the Kimpai pass. The bark sailed on the 29th of March, 1863, from Shanghai to New Chang at the mouth of the Lian Ho river in the northern part of China. In entering Lian Ho river, the vessel was damaged, but the injuries were not such as to make her unseaworthy. On the 4th of May, 1863, the bark took in a cargo for Fu-chau-fu, a port on the

Min river and sailed therefor. On leaving New Chang at the mouth of the Lian Ho river, she sustained more serious injury. After she left the Lian Ho river, she sustained no further disaster. On the 13th of June, 1863, she arrived at Pagoda anchorage, ten miles above Kimpai pass on the Min river. Upon a survey held there, it was found that she was badly injured, and it was decided to dismantle and sell the vessel.

It was not claimed that any damage was done to the vessel in the Min river, but it was admitted that the injuries sustained were caused at a place common to a voyage to and from New Chang from and to any other port than Fu-chau-fu or the Min river.

The defendants moved for a nonsuit, upon the ground that the warranty in regard to the use of the Min river, in each policy, having been violated, the plaintiffs could not recover. The court denied the motion.

The defendants requested the court to charge the jury the same as to the effect of entering the Min river, and that the defendants were thereby discharged from all liability under the policy, which was also refused, and the defendants excepted. The jury found a verdict for the plaintiff.

*John E. Parsons,* for the plaintiff. I. In the case of voyage policies, though a deviation vitiates the policy, it is well settled that an intention to deviate does not do so ; and that the insurer is liable for all damages sustained before the vessel reaches the point of divergence. In this case, it is true, the " Cora " had taken in a cargo to leave at Fu-chau-fu, on the prohibited river, but that fact has been repeatedly held to be immaterial. *(Hare* v. *Travis,* 7 *B. & C.* 14. 14 *E. Com. L.* 4.) Policy on a voyage at and from Liverpool to London. The captain took in goods at Liverpool for Southampton, intending to go first to Southampton. He did go there, delivered the goods shipped for there ; thence went to London. *Held* : Putting into Southampton was a deviation, but the policy attached to the dividing point ; and there was

liability for loss previously sustained. *Kewley* v. *Ryan*, (2 *H. Bl.* 343,) is precisely similar. In *Marine Insurance Company* v. *Tucker*, (3 *Cranch*, 357,) a vessel was insured at and from Kingston in Jamaica for Alexandria, and sailed with intent to go first to Baltimore and then to Alexandria; before her arrival at the dividing point, she was captured. The company were held liable. *Hobart* v. *Norton*, (8 *Pick.* 161,) is a very strong case. Voyage from Boston to Charleston. The captain took goods for Edgarton, intending to stop there, and did so, though, as it happened, stress of weather would have compelled him to do so, had he not had the intention. He then proceeded to Charleston, and for a subsequent loss the underwriter was held liable; the intention to deviate not being perfected, the stress of weather really compelling the captain to seek Edgarton. *Henshaw* v. *The Marine Insurance Co.* (2 *Caines*, 274.) Insurance upon a voyage at and from Newry, in Ireland, to New York. The captain took passengers for, and landed them in Halifax; but in the Irish Channel, before reaching the dividing point, the vessel struck a rock, and received damage, for which the company were held liable. (*Foster* v. *Wilmer*, 2 *Stra.* 1249. *Carter* v. *The Exchange Ass. Co. id. Thellusson* v. *Fergusson, Dougl.* 361. *Heselton* v. *Allnuth*, 1 *M. & S.* 46. *Middlewood* v. *Blakes*, 7 *D. & E.* 162. *Silva* v. *Low*, 1 *Lex. Mer. Amer.* 324. *S. C.* 1 *John. Cas.* 184. *Lawrence* v. *Ocean Ins. Co.* 11 *John.* 261. 1 *Phillips on Ins.* § 1001.)

II. By analogy, an intention to break the warranty not to use the Min river, did not operate as an immediate breach; and the loss having happened before the "Cora" reached the point of divergence, when first could there be an actual breach, the defendants became liable. A deviation, in the sense of the substitution of a different terminus, cannot be predicated of a time policy. (*Union Ins. Co.* v. *Tysen*, 3 *Hill*, 118. *Keeler* v. *Fireman's Ins. Co.*, *Id.* 250.) The "Cora" did, after the loss, use the Min river, and it may be claimed that such subsequent breach avoided the policy *ab*

*initio,* and so discharged the perfected liability of the defendants. This is not so in the case of a time policy—such a policy would only become avoided from the breach, and as to future losses. 1. The use of the Min river related to a circumstance necessarily subsequent to the commencement of the risk, and in such case " the assured is entitled to recover for an antecedent loss, though the warranty should not be complied with." (1 *Phillips on Ins.* § 771. *Taylor* v. *Lowell, Admr.* 3 *Mass. R.* 347. *Am. Ins. Co.* v. *Ogden,* 15 *Wend.* 532.) Cases of a vessel warranted seaworthy, subsequently becoming unseaworthy. 2. A warranty, the breach of which defeats the policy *ab initio,* must be in the nature of a condition precedent, the effect of the non-fulfillment of which is that the policy never attached, and the assured is entitled to a return of the premium. (*Delavigne* v. *The United Ins. Co.,* 1 *John. Cas.* 310.) In cases asserting that the breach of a warranty destroys the policy from the beginning, it will be found that the warranty was in its nature a condition precedent. (*Rich* v. *Parker,* 7 *T. R.* 705. *Colby* v. *Hunter,* 3 *C. & P.* 7.) For example, warranty of neutral property. (*Duguet* v. *Rhinelander,* 1 *John. Cas.* 360. *Jackson* v. *The N. Y. Ins. Co.,* 2 *id.* 191. *Elbers* v. *The United Ins. Co.,* 16 *John.* 128.) That a vessel is an American vessel. (*Murray* v. *The United Ins. Co.* 2 *John. Cas.* 168.) 3 *Kent's Com.* 288, where Chancellor Kent uses condition precedent as a term synonymous with that warranty a breach of which he says avoids the contract *ab initio.* 3. The warranty in this case is in the nature of a condition subsequent, the effect of the non-observance of which is only to defeat the contract as in favor of the defaulting party from the time of the breach. (4 *Kent's Com.* 125.) 4. From June, 1862, to May, 2863, the " Cora " was admittedly under the protection of the two policies. To that time there had not been even the intention to violate their terms. For any partial loss, therefore, up to that time the defendants were liable ; and the policies having attached, the assured could not claim

a return of the premium. The policies thus obtained vitality ; how long did it continue ? obviously up to the fact that destroyed the policy, which was the use of the Min river *subsequent to the loss.* In *Day* v. *The Orient Mut. Ins. Co.*, (1 *Daly*, 13,) the loss was subsequent to the breach.

III. There was a total loss of the vessel. 1. Actual, because it was admitted that the " Cora " was made incapable of rendering further sea service. 2. Constructive, because to repair her would have cost, over all deductions, $14,633.28, or more than one-half her valuation of $20,000, which circumstance the vessel policy makes a constructive total loss. The freight policy provided in terms that " in case of a total loss of the vessel, actual or constructive," * * " a total loss is to be paid under the " freight policy. The amount of the loss on the freight policy is admitted. The freight earned on her voyage by the " Cora " only amounted to $3365. The freight was however valued at $4000 in the policy " carried or not carried," by which words the company assume the risks of a short freight. (*De Longuemere* v. *Phœnix Ins. Co.*, 10 *John.* 127.)

IV. There is no question as to the amount due on the vessel policy. The plaintiff is therefore entitled to judgment for the amount of the verdict.

*D. D. Field,* for the defendant. I. The warranty in the policy on the vessel that she should not use the Min river, clearly prohibits any voyage to a port upon that river. 1. Contracts are to receive such an interpretation as will give every stipulation reasonable effect. (*Ward* v. *Whitney*, 8 *N. Y. Rep.* 446. *Decker* v. *Furniss*, 14 *id.* 622. *Hamilton* v. *Taylor*, 18 *id.* 358. *Richards* v. *Warring*, 39 *Barb.* 42. *James* v. *Tallent*, 5 *Barn. & Ald.* 889.) 2. If there is any doubt as to the meaning of this clause, it must be interpreted in the sense in which the insured (who makes the warranty) had reason to believe that the insurer understood it. (*Barlow* v. *Scott*, 24 *N. Y. Rep.* 40.) 3. If any uncertainty still

remains, it must be construed most strongly against the insured; this clause being in the nature of a promise on his part. (2 *Parsons Contr. 5th ed.* 506.) 4. Applying these rules to the case in hand, it is evident that the warranty not to *use* certain ports means that the insured will not send his vessel to any of them. Vessels are seldom wrecked while actually *using* a port. The perils which cost most to the insurer are mainly those which happen *upon the way* to ports or in attempting to enter them; and it was against these that the defendant wished to be, and believed that it was, protected. The vessel in this case was perfectly safe when once within the Min river. It was the danger of *entering* the river against which the policy was meant to protect the insurer.

II. The act of sailing for a port on the Min river was a deviation from the voyage prescribed by the policy. This was a time policy, intended to cover not merely one special voyage, but all kinds of voyages not excepted therefrom. The insurer could not use any different language, which should more plainly exclude a voyage to the Min river. Let us, however, suppose that a voyage policy should be made out, permitting any voyage *except* to the Min river. That would be in effect the same as the policy now sued upon; and there can be no doubt that under such a policy the plaintiff could not recover, upon the facts which appear in this case. This is settled in cases of decisive authority. (*Forbes* v. *Church,* 3 *John. Cas.* 159. *Tasker* v. *Cunninghame,* 1 *Bligh,* 87. *Wooldridge* v. *Boydell,* 1 *Dougl.* 16. *Way* v. *Modigliani,* 2 *Term Rep.* 30. *Stocker* v. *Harris,* 3 *Mass. R.* 409. *Sellar* v. *McVicar,* 1 *Bos. & Pul.* 23. *Marine Ins. Co.* v. *Stras,* 1 *Munf.* 408. 2 *Pars. Mar. Law,* 309.) *See particularly Merrill* v. *The Boylston Fire & Marine Ins. Co.* (3 *Allen,* 247.)

III. It is to be observed that this was not a case of mere *intention* to deviate. The whole cargo was destined for Fuchau-fu, a port which the vessel was forbidden to enter. It is true that she was destined to proceed from thence to Shang-

hai ; but every vessel is destined to proceed further after landing her cargo. No ship, while seaworthy, is sent to a port with the design that she shall stay there forever ; least of all does an American vessel enter a Chinese port with any intention of staying there longer than is necessary to discharge her cargo. The ultimate destination of the vessel is therefore wholly immaterial. *The voyage* upon which it was injured, was a voyage for a port on the Min river, and was therefore not a voyage which the defendant ever agreed to insure. The case is in every aspect governed entirely by the decisions already cited, which show that the policy never attached upon this voyage.

IV. The vessel was expressly *warranted* not to use the Min river. This warranty was confessedly violated, and the defendant was thereby discharged from the obligations of the policy.

1. It is undoubted law that the breach of an express warranty, whether material or not, puts an end to the contract. It is not necessary to show that the insurer suffered any injury from such breach. (2 *Pars. Mar. Law*, 104. *Newcastle Ins. Co.* v. *Macmorran*, 3 *Dow*, 255. *Blackhurst* v. *Cockell*, 3 *Term Rep.* 360. *De Hahn* v. *Hartley*, 1 *id.* 343. 2 *id.* 186.)

2. The warranty was violated in letter as well as in spirit, by the actual entry of the vessel into the prohibited river.

3. But it was previously violated in spirit and substance by the very commencement of a voyage for the prohibited river. From the moment of sailing, the vessel was out of the protection of the policy.

V. The warranty of the freight policy was also confessedly violated, the vessel going above the Kimpai pass in the Min river. And there being no loss of the vessel for which the insurers were liable, the clause in the margin of the freight policy does not apply.

*By the Court*, INGRAHAM, J. The only questions in this case arise on the fact which is admitted that the vessel in-

sured went to a port on the Min river, contrary to the provisions in both policies. These being time policies, the rules as to deviation do not apply to the same extent as in voyage policies. Even in a voyage policy, the underwriter is held liable although a deviation was intended, until she reaches the point of divergence and turns off from the voyage insured. (*The Marine Ins. Co.* v. *Tucker*, 3 *Cranch*, 357. *Maryland Ins. Co.* v. *Wood*, 7 *id.* 404. *Hare* v. *Travis*, 7 *B. & C.* 14. *Kewley* v. *Ryan*, 2 *H. Bl.* 343. *Hobart* v. *Norton*, 8 *Pick.* 161. *Lawrence* v. *Ocean Ins. Co.* 11 *John.* 241.)

Under time policies, the mere intention to deviate has never been held sufficient to avoid the policy, although during the period of the violation of the warranty, the vessel is not covered by the policy. In *The Union Ins. Co.* v. *Tysen*, (3 *Hill*, 118;) Cowen, J. says : "It is of the nature of the policy in question (a time policy) that it limits the vessel to no geographical track. It is impossible, therefore, to make out a defense on the ground of a deviation in the ordinary sense of the word. Nor can any particular trip or voyage be regarded as having the effect of a deviation, unless it be undertaken in fraud of the policy."

In the present case, the admission is that the injuries were sustained in entering the mouth of the Lian Ho river, on the voyage to New Chang, and on leaving that port at the same place. During this period the vessel was covered by the policy ; up to this time the warranty had not been violated, and the admission in the case is, that she suffered no further disaster after leaving the Lian Ho river.

There is also another rule applicable to such cases, which if the question was doubtful, would be in favor of the respondents. It is that clauses in a policy providing for exceptions, being the words of the insurer and not of the insured, are to receive a strict construction against those for whose benefit they are introduced, (*Hoffman* v. *Ætna Ins. Co.* 32 *N. Y. Rep.* 405 ;) and where a doubt exists as to the effect of intended violation of the warranty, the insurer should be held

to a strict construction, so as not to avoid the policy until the same is actually violated. The case of *Barlow* v. *Scott,* (24 *N. Y. Rep.* 40,) does not in any way conflict with this rule. That was a case of a sale of lands where the deed was not such as was understood between the parties, and the vendor was held bound to fulfill his promise as understood between them.

Upon these facts, I think there is nothing to warrant us in holding that the plaintiffs are not entitled to recover for damage done to the vessel while she was not in violation of any of the provisions of the policy. It was not in any way within the prohibition either to enter or to leave the port of New Chang and the Lian Ho river. Whatever was intended after she left that port can in no way affect the plaintiffs' right of recovery for any damage previously incurred.

As to the other claim, for recovery on the policy insuring the freight, a different question arises. The insurance in that policy was for a specific sum at which the freight was valued, and no proof of value was necessary. The parties have agreed upon the sum which the plaintiffs should recover if they are entitled to any thing. (*Delano* v. *Am. Ins. Co.* 42 *Barb.* 142.)

But this policy was intended to cover the freight during the whole period of insurance. It was not confined to the period when the vessel sailed from the Lian Ho river, and the warranty was violated when the vessel entered Min river above Kimpai pass. It matters not what was determined upon afterwards, or what befel the vessel while that violation existed. The policy ceased to cover the freight from that time. The vessel having been sold while in the river and before the violation terminated, I see no ground on which the plaintiffs could recover for freight thereafter. Up to that period there had been no loss of freight. If there was any afterwards, it was at a time when the violation was in existence, when the policy ceased to be in force and its provisions did not apply.

For this portion of the recovery, the judge erred in not instructing the jury that the plaintiffs could not recover, as requested by the defendant's counsel.

The case being heard upon exceptions before judgment, the judgment should be set aside and a new trial ordered, with costs to abide the event, unless the plaintiffs within ten days elect to remit so much of the recovery as is claimed under the policy on the freight ; in which case judgment is ordered for the balance.

[NEW YORK GENERAL TERM, April 1, 1867. *Leonard, James C. Smith* and *Ingraham*, Justices.]