MYRA L. WADSWORTH, Respondent, *v.* THE JEWELERS AND TRADESMEN'S COMPANY of New York, Appellant.

Where a policy of life insurance contains a promise to pay a certain specified sum, and this is followed by obscure clauses, difficult to be understood or requiring expert knowledge for their comprehension, they will not be construed as intended to impair the promise, but should receive the construction the insurer had reason to suppose was put upon them by the insured. To effect an impairment of the original obligation, the language of the subsequent clauses must be clear and unambiguous.
Reported below, 26 J. & S. 88.

(Argued January 28, 1892; decided February 12, 1892.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 6, 1890, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial without a jury.

The following is the opinion in full:

"The plaintiff seeks to recover upon a certificate of insurance issued by the defendant upon the life of Elbert E. Wadsworth, her late husband, for her benefit. The only question presented by this appeal is as to the amount payable to the plaintiff under the contract of insurance.

"The defendant is a mutual benefit association incorporated in 1886 under chapter 175, Laws of 1883. It issued its certificate of membership, or policy of insurance to the plaintiff's husband, which, after preliminary recitals, declared ' There shall be payable to Myra L. Wadsworth, $4,000 from the death fund of the company at the time of said death, or from any moneys that shall be realized to the said fund from the next assessment as hereinafter set forth, and no claim shall be otherwise due or payable except from the reserve fund as hereinafter provided.'

"It will be observed that there is no plain suggestion in this provision that the amount payable is in any way liable to be lessened; it is to be paid, all of it, 'from the death fund of the company at the time of said death,' but lest that fund at that time may not be large enough, the further provision is added, obviously to supply the deficiency, ' or from any moneys that shall be realized to the said fund from the next assessment to be made as hereinafter set forth.'

"The final clause of the promise, 'and no claim shall be otherwise due or payable except from the reserve fund as hereinafter provided,' gives notice that there is also a reserve fund to which recourse may be had. The insured, reading the entire provision, would probably regard it as immaterial to him whether payment should be made from one fund or another, but would remark with satisfaction that three sources for payment were provided.

"The trial court awarded the plaintiff all the moneys in the death fund at the time of the death of her husband, namely, $1,798.35, and also all that were ' realized to the said fund

from the next assessment,' namely, $1,749.07, being eighty per centum of the total assessment. The aggregate of both sums fell short of $4,000. There was no reserve fund applicable to the payment, and the plaintiff has, therefore, recovered less than the amount apparently promised her. The defendant opposes the construction we have given to the promissory parts of the contract, and claims that the plaintiff was only entitled to the amount in the death fund at the date of the death, or to the amount 'realized to that fund from the next assessment,' and not to both amounts.

" The whole contract consists not only of the certificate of membership, but of the application for membership, and the constitution and by-laws of the defendant — quite a volume of matter, requiring careful attention, and possibly skill for a complete understanding of the precise contractual relations of the insurer and the insured.

"But the other provisions of these instruments seem to harmonize with the construction we have adopted.

" The policy of insurance further provides : ' If  *  *  * the death fund is insufficient to meet existing claims by death, an assessment shall then be made upon every member  *  *  * at the date of the last death assessed for,' and eighty per cent of the net proceeds thereof ' shall go into the death fund.' Section 2, article 5 of the constitution provides that the death fund 'shall be used only for the payment of death claims,' and also prescribes details of assessment. Section 1, article 8 of the constitution requires payment to be made to the beneficiaries of the amount ' to which the same are entitled according to the terms of the certificate of membership.' Section 8 of article 9 provides that ' so long as sufficient money is in the death or mortuary fund to pay existing claims, no assessment will be made,' thus implying that if it is not sufficient, an assessment will be made to make it so.

" There is nothing in the constitution to cut down the amount promised to the beneficiary, unless it is section 3 of article 5 of the constitution, as follows : ' In case a death claim is proven while a single assessment is insufficient to pay the said claim in full, there shall be paid in full satisfaction of

such claim, a sum *pro rata* of the membership and benefits in force at the time of the death of such member.'

" This provision is obscure — it probably means that a single assessment is expected to be large enough to pay any death claim in full, but as it may not be, then such additions must be made to it as shall increase it to a 'sum *pro rata* of the membership and benefits in force.'

" We suppose this obscure expression is intended as the equivalent of the methods of replenishing the death fund elsewhere provided for, and not as a provision for its abatement. If intended as an impairment of the obligation to pay in full, or at least to pay such less sum as is already in the death fund at the date of the death of the insured, with the proceeds of· the next assessment applicable and added thereto, such intent is not expressed with sufficient certainty to be effective.

" If this policy is so framed as to promise a payment of $4,000, and then to impair the promise by the introduction of subsequent and obscure clauses difficult to be understood or requiring expert knowledge for their comprehension, we should adopt that construction which we think the insurer had reason to suppose was understood by the insured. (*Hoffman v. Ætna Fire Ins. Co.*, 32 N. Y. 405.)

" The defendant lays stress upon the proposition that if the death fund and an assessment shall both be exhausted in paying this claim, injustice will be done to the surviving members, since, upon the next death, no death fund will exist to which a like assessment can be added. It seems that the plaintiff's husband was the first of the members of this association to die.

" The death fund is created from initiation fees, annual dues and assessments. If no death should soon occur, it is obvious that this objection might prove invalid. However that may be, the objection goes to the practical wisdom of the defendant's scheme of insurance, rather than to the plaintiff's legal rights.

" It also appears that the deceased was one of the charter members and paid with his associates what was termed the ' first assessment,' in addition to the fixed dues for admission. If they thus voluntarily created a small death fund in advance,

it is probable that they did so in view of the contingency that a death claim might arise while the company was too weak to meet it in the usual course of its business.

"The plaintiff being within the contingency thus in part provided for, may justly claim the benefit of the provision.

"The judgment should be affirmed, with costs."

*James M. Hunt* for appellant.

*S. F. Kneeland* for respondent.

LANDON, J., reads for affirmance.
All concur.
Judgment affirmed.