Spear, J.
The action of the trial court which was the ground of reversal may be more briefly treated by considering defendant’s requests to charge which were refused than by a review at large of the charge as given.
1. As applicable to its defense of forfeiture by reason of alleged false representation and warranty regarding ownership of property, the defendant requested the court to charge that “No recovery can be had in this action for the loss of any property described in the policy if the jury are satisfied from the evidence that Mrs. Webster had no interest or ownership in the personal property mentioned in the policy, and that Mr. Webster had no ownership or interest in the dwelling-house described in the policy. ”
The claim of the company on this branch of the case was and is, that in the face of the representation and warranty of the insured that they jointly owned the property, there could be no recovery on a policy issued to them jointly so long as the proof disclosed that the wife was sole owner of the dwelling and the husband sole owner of the personalty ; in effect that the agreement was violated the moment it was made, and although the parties had paid the company $45 as premium, which the *563 company retained, yet that there never was any valid contract, and the insured, although acting in entire good faith, never had a dollar of insurance on their property.
Perhaps, technically speaking, the claim is not one of forfeiture, for forfeiture is a deprivation or destruction of aright in consequence of the non-performance of some obligation or condition, and we are not accustomed to associate the idea of-forfeiture with a contract which has not existed ; but manifestly the law as to forfeiture will furnish a guide to the proper disposition of the question. Relief against forfeitures is matter of equitable cognizance, but rules applicable to the subject are resorted to in courts of law, and there seems no good reason why the principles which g’overn courts of equity should not be available in a suit at law where the facts make such cognizance necessary to the ends of justice.
A primal rule is that forfeitures are not favored either in equity or at law; indeed, it is declared as a universal rule that courts of equity will not lend their aid to enforce a forfeiture. Following as a corollary from this, provisions for forfeitures are to receive, when the intent is doubtful, a strict construction against those for whose benefit they are introduced. West v. Ins. Co., 27 Ohio St., 1; Manhattan Ins. Co. v. Smith, 44 Ohio St., 156; Blackwell v. Ins. Co., 48 Ohio St., 533; Livingston v. Sickles, 7 Hill, 255; Catlin v. Springfield Ins. Co., 1 Sumn., 434; Breasted v. Farmers' Loan and Trust Co., 4 Seld.,305. As said by Sherman, J., in Bond v. Swearinger, 1 Ohio, 403, respecting a statutory forfeiture: “Whatever may be the nature or kind of forfeiture, it is never carried by construction beyond the clear expression of the *564 statute creating it.” And by Porter. J., in Hoffman v. Ǣtna Ins. Co., 32 N. Y., 413: “It is a rule of law, as well as' of ethics, that when the language of a promisor may be undérstood in more senses than one, it is to be interpreted in the sense in which he had reason to suppose it was understood by the promisee. Potter v. Ins. Co., 5 Hill, 149 Barlow v. Scott, 24 N. Y., 40, It is also a familiar rule of law, that if it be left in doubt, in view of the general tenor of the instrument and the relation of the contracting parties, whether given words were used in an enlarg-ed or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the ¡aromisee. Coke’s Litt., 183; Bacon’s Law Maxims, Reg., 3; Doe v. Dixon, 9 East, 16; Marvin v. Stone, 2 Cowen, 806. This rule has been very uniformly applied to conditions and provisions in jjolieies of insurance, on the ground that though they are inserted for the benefit of the underwriters, their office is to limit the force of the principal obligation. Yeaton v. Fry, 5 Cranch, 341; Palmer v. Ins. Co., 1 Storey’s R., 364-5; Petty v. Ins. Co., 1 Burrows, 349.” See also Pipe Line v. Ins. Co., 145 Pa. St., 346 ; Chandler v. Ins. Co., 21 Minn., 85; Anderson v. Fitzgerald, 4 H. of L. Cas., 484; Riddlesbarger v. Ins. Co., 7 Wall, 386; Baley v. Ins. Co., 80 N. Y., 21; Burleigh v. Ins. Co., 90 N. Y., 221; Griffey v. Ins. Co., 100 N. Y., 417.
Applying'the foregoing rules, how stands the case?
This defense is based entirely on the language of the representation. In giving construction to this representation, what meaning should be placed on the words used? Manifestly such as was intended by the applicants, and which the company *565 knew, or ought to have known, they intended. Should the word “jointly” receive construction in accordance with strict legal ideas ? If so, does it mean that the plaintiffs were joint tenants as defined by Blackstone, giving right of survivorship ? An Ohio lawyer, even, would hardly have that in mind, for joint tenancy does not exist in Ohio. Should the word be held to imply tenancy in common, where two or more hold by an undivided possession but several freeholds, neither - being entitled to an exclusive part, but each entitled to occupy the whole in common with the others, and at the death of one his interest to pass to his heirs and not to the survivors? Plaintiffs claim that they did in fact state to the agent who filled up the application the exact condition of the title, and it was not their fault if he did not so write it. But, be this as it may, and even though the word would suggest tenancy in common to the legal mind, these plaintiffs were not lawyers; the property was in the country, and they were, without doubt, plain country folk. Who would suspect them of intending to be understood that their ownership was that of joint tenants, or of tenants in common, within legal definitions ? Rather is it natural to presume that they used the word in the popular sense, implying that they owned the property together, and that no other person was interested in it. And they did. They were in the joint possession of the real estate, and were enjoying- the use of the personalty together, and no third person was the owner, in any sense, of any part of it. While the title to the real estate was in the wife, and while the husband had no estate in it, yet he had, by force of recent statutes, an inchoate dower right in it, liable to become vested in ease she should die seized of it *566 leaving him her widower, a substantial property right, capable of valuation in a proper proceeding, and, under section 3L11, Revised Statutes, he could not, even during- her life, their marital relations remaining, be excluded from her dwelling.
Nor was the alleged failure to state the exact ownership prejudicial to the company. The purpose of statement of ownership is to prevent the making of wagering contracts, or such as would afford a temptation to the insured to purposely or negligently permit the property to burn; and this purpose would seem to be fully accomplished when it appears that the wife and husband own all the property covered by the policy, and are in possession and use of it in common, although there be a small portion of which the wife has not leg’al ownership, for usually there is no more vigilant guardian of the husband’s interests than is the wife. The property is used by both, for their common comfort and welfare, and that of the family. In the husband’s absence the wife has, ordinarily, the entire charge of it, and her'interest in its preservation is scarcely second to his.
If the company may .stand on a strict technical construction of the words used, and hold the plaintiffs to them though they did not fully apprehend their legal effect, and ought not reasonably to have done so, it is placed in the position of tempting patrons into the payment of premiums, and into resting on a mistaken belief that they have indemnity, only to find, when the trial comes, that their reliance had been upon a broken reed. A court cannot sustain such a contention.. If technical forfeitures are to be maintained on such grounds, confidence in commercial faith will be weakened and important property rights impaired. It would *567 .be, as it seems to us, carrying technicality to 'a most unreasonable length, to hold that the representation as to ownership shall forfeit the policy.
Whether a joint action could have been maintained for the personal property we need not determine for no proof of loss of personal property, or its value having been offered, that claim, dropped out. It was held in Dwelling House Ins. Co. v. Leedy et al., decided at January term, 1894, though not reported, that the interest of the husband in the wife’s dwelling house used as a homestead by the family, is sufficient to support a recovery by the two jointly on a policy issued to both, and we but follow that case in holding that the action was properly brought in. the name of both in this case.
The instruction was properly refused,
2. Defendant also requested the court to charge that “If the'plaintiff, after the issuing of the policy sued upon and before the loss, placed a mortgage lien upon the real estate upon which the house burned was situated, without notice to the company, or its consent to such incumbrance, such action on the part of the plaintiff was in violation of the terms of the policy and rendered the policy void, and the plaintiffs, if the jury find the facts as above stated, cannot recover in this action.”
This the court refused to give, and charged in substance that the creating of a mortgage incumbrance after the issuing of the policy and before the fire, without notice or consent by the company, would not of itself constitute a defense, but that it would constitute a defense if the jury should find that the giving of such mortgage materially increased the risk. This holding rests upon the proposition that the facts bring the case within the *568 operation of section 3643, Revised Statutes, and' that it is governed by that part which reads as follows:
“Any person, company or association hereafter insuring any building or structure against loss or damage by fire or lightning-, by a renewal of a policy heretofore issued, or otherwise, shall cause such building or structure to be examined by an agent of the insurer, and a full description thereof to be made, and the insurable value thereof to be fixed by such agent; in the absence of any change increasing- the risk without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss the whole amount mentioned in the policy or renewal upon which the insurers receive a premium, shall be paid; and in case of a partial loss, the full amount of the partial loss shall be paid.” * * *
No question is made as to the import of the language of the policy in respect to the creating of mortgage liens. It is so clear that its meaning’ could not have been misapprehended,' and is to be enforced as written unless the statute controls the case.
We are not able to agree with the construction of this statute given by the learned trial judge. As we construe the statute, the examination required of, the agent before taking the risk, relates to the physical condition of the property such as an inspection would disclose, and does not relate to the matter of incumbrances, and hence thechange referred to in the statute relates to some physical change in the insured building, its use, or its surroundings, which would by reason of changed condition, naturally increase the hazard incurred by the company, and does not relate to a change respect *569 ing incumbrances. And that where a policy of insurance, as in this case, stipulates that if any part of the property shall be incumbered by mortgage without the consent of the company the policy shall be void, such stipulation is not within the provision of section 3643, and the right of the company to make such condition, and of the insured to accept it, remains notwithstanding the statute. So that, if, after the issuing of the policy and before the loss, such incumbrance is created by the insured, without the consent of the company, the policy is thereby invalidated.
The question involved is not different in principle from one of the questions disposed of in Sun Fire Office v. Olark, decided October 29, 1895, 34 L. B. 281, and the reasoning of the opinion in that case is so satisfactory, and so well supports the conclusion here reached, that further discussion is deemed unnecessary. It is further supported by the able opinion of the learned judge of the circuit court in Dwelling House Ins. Co. v. Webster et al., 7 O. C. C., 511, to which special reference is here made. Our conclusion is also in harmony with the decision in Iris. Co. v. Leslie, 47 Ohio St., 409, and not inconsistent with the judgment of this court affirming Ins. Co. v. Bowersox, reported in 5 O. C. C., 444, and the judgment affirming- Ins. Co. v. Krukal, reported.in 7 O. C. C., 356, when the records in those cases are understood.
It follows that in refusing this instruction, and in the charge as given, the common pleas erred.

Judgment affirmed.