Michael Catalano, J.
Plaintiff and defendants move for summary judgment upon the following undisputed facts:
Prior to April 10, 1964, defendant, Lancaster Sales, Inc. (Lancaster) and plaintiff’s wife, Beatrice Malecki (Beatrice), negotiated for the purchase of a 1964 Ford Falcon automobile. On that date, Lancaster presented plaintiff and Beatrice with a written conditional sale contract printed in part by defendant, Manufacturers and Traders Trust Company (Bank) and typewritten in part by Lancaster, at the top of which after the printed word, “ Buyer,” was typewritten the name “ Beatrice Maleckiin the body of which contract are the following printed words and typewritten Arabic numerals: ‘ ‘ Upon the following terms of payment: * * * 5. Life Insurance (Pays unpaid balance at time of death of first of undersigned buyers) $33.57 * * * 10. Time Sale Price # * # $2853.37 * # Buyer agrees to pay the Time Balance in Instalments to seller in 36 equal monthly instalments of $77.72 each * * * All payments to be made at any office of Manufacturers and Traders Trust Company * * * This contract is subject to the terms and conditions set forth on the reverse side of this page.” At the bottom right of the contract appear the printed words, “ Retail Instalment Contract ” under which are two lines under each of which are printed “ (Buyer’s Signature).” Lancaster requested plaintiff to sign the top line and Beatrice the second line, which they did in that order. Lancaster signed it, then assigned the contract to the Bank.
The back of the contract contains these printed words, ‘ ‘ All obligations of the Buyer, if more than one, are joint and several. * * * Third Party Guarantee. In consideration of credit already given and to be given to Buyer named in this contract, undersigned, jointly and severally guarantee to the Seller and assigns of said contract, the payment of this amount owing thereon in event of any default thereunder,” under which is a line under which is printed “ (Guarantor).” No signature appears on this last line.
When plaintiff signed the contract, he understood that “ the life insurance would pay the unpaid balance if either he or his wife should die.” Lancaster registered the automobile in Beatrice’s name as purchaser; she died August 7, 1965, when 21 installments were unpaid.
*698 Shortly after the contract was signed, a printed “ Statement of Life Insurance Protection” was mailed to plaintiff and Beatrice, stating: “In accordance with the terms of Group Life Policy No. 51-GC1 issued by the John Hancock Life Insurance Company, life insurance is provided the person indebted to the Policyholder under the above-identified account (or, if more than one person is so indebted, then that one of such persons identified as the principal debtor on the agreement to pay said indebtedness, or if none of said persons is so identified, then that person whose signature first appears on said payment agreement) in an amount equal to the unpaid balance of the above-identified account ”.
Amendment No. 9 of said group life policy issued to the Bank pursuant to section 204 (subd. 1, par. [c]) of the New York Insurance Law, which requires that forms of the same be approved by and filed with the Superintendent of Insurance, so that the policy be on public record prior to its issuance, provides : “If any agreement to pay the amount due to the Creditor shall be made by more than one person, that one of such persons who is designated on the records of the Creditor as being primarily liable or responsible under said agreement, or, if no one of said persons is so designated on the records of the Creditor, then that one of said persons whose signature appears first on said agreement, shall be deemed the Debtor for purposes of insurance under this Policy, and no other person shall be eligible for insurance hereunder because of being a party to such agreement. Only an individual personally liable for the debt shall be eligible for insurance hereunder.” (See, also, Regulations of the Insurance Department; 11 NYCRR 185.3; 185.5[a], [b] [3] [6], [c].)
Plaintiff was the person designated on the Bank’s records as being primarily liable under said agreement.
Plaintiff seeks a declaratory judgment specifying that “ said life insurance provision in the contract relieves the plaintiff from any further obligations under the contract; that the title to the said vehicle vests absolutely in the plaintiff.” The Bank counterclaims for the unpaid balance on the contract, plus interest and attorney’s fees.
Article 9-A of the Insurance Law, Life, Accident and Health Insurance Companies and Retirement Systems (§ 204, “ Group life insurance defined; premium requirements”) provides, inter alia:
“ 1. The term ‘ certificate holder, ’ as used in this chapter [28 of the Consolidated Laws] in relation to a group life insurance policy, shall mean the person to whom a certificate evidencing *699 such insurance is issued under any such policy, as hereinafter provided.”
“(c) * * * Each insurer shall file with the superintendent of insurance its forms of policies, certificate statements and applications pertaining to credit insurance together with its premium rates for such insurance and the same shall be subject to his approval.”
Here, plaintiff is the certificate holder pursuant to the certificate statement received by him directly after signing the contract.
The basic issue in this case is who was covered with life insurance, plaintiff or Beatrice?
The contract states: “ Upon the following terms of payment: * * * 5. Life Insurance (Pays unpaid balance at time of death of first of undersigned buyers) ”.
The first undersigned buyer is plaintiff.
Plaintiff’s counsel’s brief contends that the contract words mean: 1 ‘ That the life insurance was to be paid at the time of the first buyer’s death”. This would mean Beatrice who has predeceased plaintiff.
The best evidence of who was actually insured is the insurance contract itself, in this case, the certificate statement and the policy approved by and filed with the Superintendent of Insurance. The statement describes the person covered as, “ that person whose signature first appears on said payment agreement the policy [Arndt. No. 9] describes that person as, “ that one of such persons whose signature appears first on said agreement ’ ’.
Here, that person covered was plaintiff. Therefore, no payment was made to the Bank upon Beatrice’s death because she was not insured.
Plaintiff protests that the contract was ambiguous and thus it should be construed against the defendants as drafters, citing Hoffman v. Ætna Fire Ins. Co. (32 N. Y. 405) and O’Neil Supply Co. v. Petroleum Heat & Power Co. (280 N. Y. 50).
In the Hoffman case (ubi supra), an insurance policy was issued to plaintiff, covering its stock of merchandise, including not only their own goods, but those held by them in trust or on commission, or sold but not delivered, in their brick and marble store; the policy contained a printed proviso that it should be null and void “ if the said property shall be sold or conveyed.” Judge Porter, speaking for the court, said (p. 413): “ Reading the proviso as it was read by the parties, it is easy to discern the purpose of its insertion. It was to protect the company from a continuing obligation to the assured, if the title and beneficial interest should pass to others, whom they might not *700 be equally willing to trust. Words should not be taken in their broadest import, when they are equally appropriate in a sense limited to the object the parties had in view.”
Here, plaintiff was requested by Lancaster to lend his credit to the sale of an automobile to his wife. He was asked to sign first above the signature of Beatrice, both described as buyers. He knew she was buying the automobile which was registered only in her name. The Bank obtained a credit report on plaintiff, not Beatrice, then accepted the assignment of this contract. Plaintiff did not sign the contract on the back as guarantor, although provision therefor was printed with a blank space for a signature. The object the parties had in view was clear, the words in question should not be taken in their broadest import.
In the O’Neil case (280 N. Y. 50, supra), Judge Rippby, speaking for the court, said (pp. 55-56): “ The fundamental rule in the construction of all agreements is to ascertain the substantial intent of the parties [cases cited]. The purpose to be accomplished and the object to be advanced may be considered [cases cited] and may, if necessary, be shown by parol evidence as bearing on the consideration for the written instrument [case cited]. If it is claimed by defendant that a construction should be placed on the contract other than has been indicated, or any doubt arises from the writing itself, the court must look into the intention of the parties to be derived not alone from the words used but it must be read, so far as they may be ambiguous, in the light of the surrounding facts and circumstances [cases cited].”
Here, the primary intention for having the insurance was to protect the Bank if the person whose credit was the basis for the loan died; secondarily, it was to pay the balance of the purchase price for the benefit of plaintiff’s wife, the purchaser of the automobile. Plaintiff was neither lender nor borrower, seller nor purchaser; he was solely lending his credit to his wife so that she could purchase an automobile because her credit rating was considered inadequate by the seller and lender.
Plaintiff’s motion denied; defendants’ motion granted. No motion costs.